WOODBURY et al. *v.* GRIMES et al.

ACT REPEALED.    The act of 1864 (3 Sess. 102), relating to mechanic's liens was repealed by the act of 1867 (6 Sess. 75) upon the same subject.

EFFECT *of repeal of mechanic's lien law.*    Leins existing under the act of 1864 fell when that act was repealed, unless within the saving clause of the 28th section of the act of 1867.

CONSTITUTIONAL LAW — *mechanic's lien.*    Liens established by the act of 1864 are not protected from legislative interference by the clause of the constitution of the United States which relates to the obligation of contracts.

*Error to District Court, Gilpin County.*

SECTION 28 of the act of 1867 (6 Sess. 81) is as follows :

'" That ' An act creating a lien in favor of mechanics and others,' approved March 11, 1864, and all other acts or parts of acts incon-

sistent with, or in conflict with, this act, be and the same are hereby repealed; but nothing contained in this section shall be so construed as to affect any proceeding now pending in any of the courts of this territory under the provisions of the act hereby repealed."

This act was approved January 11, 1867.

The bill was filed March 20, 1867, and it was alleged in the bill that the cause of action accrued December 10, 1866.

Mr. E. T. WELLS, for plaintiffs in error.

Mr. A. MARSH, for defendants in error.

HALLETT, C. J.   The plaintiffs in error seek to establish a mechanic's lien, upon certain premises of the defendant Grimes, under the act of 1864.   That act was repealed by the act of 1867, and the principal question presented in this record is, concerning the effect of such repeal upon liens founded upon the act first mentioned.   In the first place, it is contended that the legislative assembly, in repealing the act of 1864, did not intend to divest liens which arose under that act, upon the ground that the repealing act is substantially the same as the original act.   It is true that many of the provisions of the first act are incorporated in the act of 1867, but these provisions relate mainly to proceedings for enforcing the lien, and not to the lien itself.   The opening section of the two acts in which the lien is given differs in language and in substance.   The act of 1864 prescribes the quantity of land to be affected by the lien, while the act of 1867 fixes no limit; the former act gives a lien to sub-contractors, and requires a statement of the amount due, together with a description of the property, to be filed with the recorder of the county, points upon which the later act is silent.   The former act contains no reference to lode mining claims, upon which a lien is given by the act of 1867. Perhaps other differences might be pointed out, but we think it is sufficient to show that there are substantial differences.   When a law is re-enacted in the same language, or in language which is substantially the same, the new act taking effect simultaneously with the repeal of the

old, we may well enough say that the law, though displaced and instantly replaced, has suffered no interruption. And this is what we understand the supreme court to say in *Steamship Co.* v. *Joliffe*, 2 Wall. 450. But when the legislative assembly, upon a subject which has previously received its attention, frames a new law identical with the first in some features, but differing from it widely in others, and expressly repeals the first act, it would be an extraordinary exercise of judicial power to declare the first act in force notwithstanding such repeal. It is not sufficient that the repealed and repealing acts should have points of identity, but the latter must be substantially the same as the former. The repealing section of the act of 1867 contained a clause, " That nothing contained in this section shall be so construed as to affect any proceeding now pending in any of the courts of this territory, under the provisions of the act hereby repealed." With this language before us, we are certainly at liberty to believe that the legislative assembly thought it necessary to protect parties, who had instituted proceedings under the act of 1864, from the effect of the repeal of that act. Now this is not at all consistent with the notion that the legislature designed that the act should remain in force as to all cases which arose under it, for " *expressio unius est exclusio alterius.*" If a saving clause was necessary to protect those who had commenced proceedings under the act of 1864 from the effect of the repeal, why was it not necessary as to those who had not commenced such proceedings? We cannot answer this question in any way that will support the theory of the plaintiffs in error, that the legislature intended to continue the act as to cases which arose under it. As this is a question of intent, we may certainly look to the language of the act for the purpose of ascertaining the intention, and we think no one can read the twenty-eighth section of the act of 1867 without being convinced that the legislative assembly intended to repeal the act of 1864 to all intents and purposes, except as to cases in which proceedings to enforce the lien were pending in some court. It is also urged that

liens founded upon the act of 1864 are contracts protected from hostile legislation by the constitution of the United States, and therefore the lien in this case was not in any way affected by the repeal of that act. It was said in *Bronson* v. *Kinzie:* "It is difficult, perhaps, to draw a line that would be applicable in all cases between legitimate alterations of the remedy and provisions which, in the form of remedy, impair the right;" and we have appreciated this difficulty in our efforts to arrive at a correct conclusion in this case. It is, indeed, "manifest that the obligation of a contract and the rights of a party under it may, in effect, be destroyed by denying a remedy altogether, or may be seriously impaired by burdening the proceedings with new conditions and restrictions so as to make the remedy hardly worth pursuing." Bearing in mind that "whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract," we proceed to inquire whether the act of 1864 gave a remedy, of which the legislative assembly could deprive the plaintiffs in error without impairing the obligation of the contract. In the first place, it is noticeable that the act does not establish contracts between parties, but gives a remedy upon contracts made without its aid. Its first words are: "Any person to whom a debt is due for labor performed or material furnished and actually used in the erection, construction, alteration or repair of any house, mill, building or structure." Now a debt cannot be due except upon a contract, express or implied, and, therefore, the act assumes the existence of a contract, but does not create it. Furthermore, the common law gives an action to recover the value of labor and material furnished, and, therefore, in every case of lien under the statute there was a perfect contract and a common-law remedy to enforce it independent of the statute. We are, then, authorized to say that the act of 1864 gave a new and additional remedy in a familiar class of cases. If we contrast this new remedy with the pre-existing common-law remedy, we shall find that the debtor

was equally bound to pay his creditor under both of them ; in other words, the statute did not increase or diminish the obligation to pay previously resting upon the debtor. The statute enabled the creditor to appropriate the land upon which he labored, and placed his materials, together with the structure which he erected, to the payment of his debt, but it did not add to the legal liability of the debtor arising from the contract to pay his creditor. Both before and after the passage of the act, the common law gave to the creditor the right to resort to the property of the debtor for the purpose of satisfying his demand, so that, in this respect, the new remedy was not different from the old. But there was one, and but one, essential difference between the two remedies. Under the statute, a lien upon the property benefited by the labor and materials of the creditor arose contemporaneously with the contract, preventing alienation by the debtor to the prejudice of the creditor, and giving to the creditor a preference over all other creditors of the debtor who should subsequently acquire liens upon that property, while, by the law as it existed before the statute, no such lien was established until judgment was obtained. Now it is plain that the statute was important to the lien creditor only in case of a contest with the grantees or creditors of the debtor, and that it did not essentially change the relations between the debtor and creditor. The statute gave to the lien creditor a preference over the grantees and creditors of the debtor who had not, at the date of the contract, acquired a lien upon the property, but it did not subject the property of the debtor to the payment of the lien creditor's demand in any degree or manner more advantageous to the creditor than the general law. The statute did no more than prescribe a rule of priority and preference among creditors and incumbrancers, which was different from that given by the general law. Now we understand that legislative interference among the creditors and grantees of a debtor, which has the effect to postpone one for the benefit of another, is not prohibited by the constitution. It was said in *Jackson* v.

*Lamphire,* 3 Pet. 290, and repeated with approbation in *McCracken* v. *Heyward,* 2 How. 613: "It is within the undoubted power of State legislatures to pass recording acts by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time, and the power is the same whether the deed is dated before or after the passage of the recording act; though the effect of such a law is to render the prior deed fraudulent and void as against a subsequent purchaser, it is not a law impairing the obligation of contracts." The act of 1864 stands upon a similar principle. It postponed creditors and grantees of the debtor to the mechanic and material man, but it did not touch the obligations of the contract. In a struggle between creditors and grantees it might be decisive of the contest, but it did not affect the relation of debtor and creditor.

The counsel for plaintiffs in error has, with much industry and ability, drawn from the decisions of the supreme court many passages which appear to sustain his views. It must not be forgotten, however, that the language of each case was spoken with reference to the points before the court. We find, in the reports of that court, no case like the one under consideration. In *Bronson* v. *Kinzie,* no question arose between contesting claimants, and the law imposed new conditions and restrictions upon the sale of the mortgaged property for the benefit of the mortgagor. So, in *McCracken* v. *Heyward,* 2 How. 608, new conditions and restrictions were prescribed respecting the sale of property under judgments at law for the benefit of the debtor. In the case at bar, as we have seen, the act of 1864 established a preference between creditors and grantees, but did not affect the debtor. In *Steamship Co.* v. *Joliffe,* 2 Wall. 450, the statute alone gave the right and the remedy, and it was declared to be within the constitutional provision. If subject to repeal, the creditor's demand would have fallen with the statute, and nothing would have been left to him. In the case at bar, it was only the creditor's preference over other creditors and grantees of his debtor which rested upon

the statute, and that, as we have seen, was within legislative control. As the act of 1864 established a rule respecting the administration and distribution of a debtor's property, we think it was not secured to the plaintiff in error by any constitutional provision. After it was repealed, a substantial remedy against the debtor Grimes, according to the course of justice as it existed at the time the contract was made, was left to the plaintiffs in error, and this was sufficient to satisfy the constitutional requirement. Cooley's Limitations, 286; *Stocking* v. *Hunt*, 3 Denio, 274; *Conkey* v. *Hart*, 14 N. Y. 22. The plaintiffs in error also aver that their lien has been restored by an act passed in the year 1868. It is not necessary to consider the effect of this restoring act, for the reason that it was not passed until long after these proceedings were commenced. At the time when this petition was filed, the act upon which it was founded was inoperative, and, therefore, the petition was properly dismissed.

The decree of the district court is affirmed, with costs.

*Affirmed.*