[No. 17667. *En Banc.* December 18, 1923.]

## Spokane & Eastern Trust Company, *Respondent,* v. Louis F. Hart, *Governor etc., et al., Appellants.*[1]

Constitutional Law (44)—Police Power—Bank Guaranty Act. The legislature had no power to amend the bank guaranty fund act [Rem. Comp. Stat., § 3293], after banks had voluntarily elected to become members and had entered the system, and thereby impose upon such members obligations different and heavier than those which they had voluntarily assumed; since the act was an exercise of the police power for the protection of bank depositors, and it is a denial of the equal protection of the laws to give it compulsory effect as to banks that are members of the system, and not as to banks that are not members.

Same (102, 116)—Equal Protection of the Laws—Class Legislation—Banks—Regulation—Depositors' Guaranty Fund. Const., Art. XII, § 1, which provides that all laws relating to corporations may be altered, amended or repealed, authorizes only general laws and does not authorize a special law by which the legislature undertook to amend the bank guaranty fund act so as to provide compulsory obligations as to only the banks that had voluntarily entered the system, and not as to other banks.

Statutes (47, 51)—Amendment or Implied Repeal. Since the amendment of the guaranty fund act "so as to read as follows" [Rem. Comp. Stat., § 3294], omitted all reference to the deposit of securities or in lieu thereof an assessment of one-half of one per cent of the total average daily deposits required in the original act, those provisions of that act were repealed by the amendment.

Same (47, 51). Laws 1917, p. 316, § 11, of the original guaranty fund·act, which, in case of depletion of this fund, provided for a "proportionate" assessment of "not more than one-half of one per cent of the total of average daily eligible deposits," is practically identical with the 1921 amendment of the section [Rem. Comp. Stat., § 3303] which authorizes the board in case the fund is depleted, to make an assessment of "not to exceed one-half of one per cent of the deposits eligible for guaranty for the preceding year;" hence the amendment did not repeal this provision of the original act; and it is immaterial that the original act provided for enforcement by a sale of the securities, and the amendment provided a lien upon the assets, as this was but a change of remedies.

[1] Reported in 221 Pac. 615.

CONSTITUTIONAL LAW (72)—OBLIGATION OF CONTRACTS—CONTRACTS OF STATE WITH INDIVIDUALS. The state, in passing the bank guaranty fund act, was not acting in a private or proprietary capacity, but was exercising its police power, and is therefore not subject to the rule operative between individuals with reference to a change or modification of the terms of a contract.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered September 11, 1922, in favor of the plaintiff, in an action to enjoin the enforcement of the state guaranty act, tried to the court. Modified.

*The Attorney General (Tanner & Garvin* and *John A. Homer,* of counsel), for appellants.

*Graves, Kizer & Graves,* for respondents.

MAIN, C. J.—In general terms, this is an action to restrain the guaranty fund board from enforcing, as against the plaintiff, any of the provisions of the state guaranty act as amended in 1921. The cause was tried to the court without a jury, and resulted in a judgment favorable to the plaintiff's contentions. From this judgment, the defendants appeal.

The facts are not in dispute, but in making a statement of the case it will be necessary, as a basis for the proper understanding of the questions to be determined, to include certain provisions of the original guaranty act, as well as some of the amendments thereto. In 1917, there was passed what is known as the bank guaranty fund act (Laws of 1917, ch. 81, p. 308) [Rem. Comp. Stat., § 3293], which provided for the voluntary combination of banks into a system the object of which was the mutual guaranty of the depositors of all member banks, so that if one bank became insolvent the other banks which belonged to the system would be required to assist in the liquidation

of the insolvent member.  For the purpose of carrying out the provisions of the act, there was provided what is called a guaranty fund board, which should consist of the governor, the state bank examiner, and three members to be appointed by the governor.  Membership in the system was voluntary, but it could not be secured except by permission of the guaranty fund board.  The procedure is detailed in the statute.  The act provides a method by which a member bank may withdraw by the giving of six months' notice and doing the other things provided for.

On March 18, 1921, the respondent, being then a member of the system, gave notice of its withdrawal. As already indicated, the legislature, in 1921 (Laws of 1921, ch. 97, p. 283) [Rem. Comp. Stat., § 3294], amended certain of the sections of the original act. On June 30, 1921, the Scandinavian-American Bank of Seattle, which was a member of the system, failed, and the warrants which were issued to the depositors of that bank, drawn upon the guaranty fund, exceeded the amount of money in the fund, and also in the contingent fund which was provided for in the amendatory act.    Section 2 [Laws of 1917, p. 309], of the original act provided for what is called the "Washington bank depositors' guaranty fund," which should consist, (a) of securities of the value of an amount equal to one per cent of the annual average deposits of a member bank, and (b) of cash equal to one-half of one per cent of the total amount of the average daily deposits.  In 1921, this section was amended, and it was there provided that there should be two funds: the Washington bank depositors' guaranty fund, and the contingent fund; the former to consist of cash equal to one per cent of the total amount of the annual average daily deposits eligible to the guaranty, and an assessment not to exceed one-tenth of one per cent of

the average daily deposits, which should go into the contingent fund until such time as that fund should equal three per cent of all the deposits eligible to guaranty in the member banks.

Under the original act, the securities there provided for were required to be deposited with the guaranty fund board. The cash there provided for was carried by each member bank upon its books as a credit to the board. Section 2 [Laws of 1917, p. 309], of the act as amended makes no reference to the deposit of securities. When the Scandinavian-American Bank failed, there had been deposited with the guaranty fund board by the respondent securities of the value of $112,000. There was carried as a credit to the board on the books of the respondent bank cash in the sum of $56,061.44. In section 11 [Laws of 1917, p. 316], of the original act there was a provision that, in the event that the cash on hand in the guaranty fund should at any time be reduced more than twenty-five per cent of the amount provided for the current year, the board should have the right to make an assessment on member banks, to replenish such fund, of not more than one-half of one per cent of the total average daily deposits. This section, as amended, contains a provision for the assessment of not to exceed one-half of one per cent per annum of the deposits eligible to guaranty, for the purpose of making good impairments of that fund. It will be noticed that the Scandinavian-American Bank failed within the period of six months after the respondent gave notice of its intention to withdraw.

After the failure of the Scandinavian-American Bank, the guaranty fund board levied an assessment of one-half per cent upon all member banks, and demanded of the respondent that it perform its obligations under the guaranty act as amended. The re-

spondent refused to do this and took the position that, by reason of the amendments, it was released from all liability under the act, since the amending act contained no provision that it should still be bound under the original act. In considering the questions to be determined, the provisions of both the original and the amendatory acts, above mentioned, will be again referred to.

There are three funds involved: First, the securities of the value of approximately $112,000; second, the cash item of $56,061.44 carried on the books of the respondent as a credit to the guaranty fund board; and third, the sum of $56,061.44, being an assessment levied by the board for the purpose of replenishing the depleted guaranty fund owing to the failure of the Scandinavian-American Bank.

The first question is whether the legislature had the power to amend the act and thereby impose upon the respondent and other member banks obligations different from or heavier than those which were assumed when a bank voluntarily entered the system. The appellants say that, when the legislature passed the guaranty act and the amendments thereto, it was acting within the police power and, therefore, had the right to change the terms of the original act, and the respondent and other member banks were bound thereby. In *Noble State Bank v. Haskell*, 219 U. S. 104, it was held that the depositors' guaranty fund act of the state of Oklahoma, which created a board and directed it to levy upon every bank existing under the laws of the state an assessment for the purpose of creating a depositors' guaranty fund, was a reasonable exercise of the police power. In *Assaria State Bank v. Dolley*, 219 U. S. 121, it was held that a law of the state of Kansas which created a bank depositors' guaranty

fund and made membership in the fund voluntary was a valid enactment. So it seems to be settled that either a compulsory or a voluntary bank guaranty law is a proper exercise of the police power.

The question here, however, is whether, after having enacted the voluntary law, and banks having elected to become members of the system under the law, the legislature can subsequently amend the act and impose new or additional burdens upon the member banks which are not required of the other banks in the state eligible to become members. If the position of the appellants is to be sustained, the amendatory provisions would be compulsory upon the member banks, but voluntary as to all other banks which were eligible to become members. The act was passed, as recited in its title, for "the security of deposits." Section 2 [Laws of 1917, p. 309], of the act provided that there is "hereby created for the protection and security of depositors in banks" the funds there provided for. The legislature, it is well settled, has the right or power to classify subjects of legislation, but this cannot be done in an arbitrary or unreasonable manner. A classification cannot be sustained when there is no just difference or distinction between the class affected and others. In *Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18, it is said:

"It is well settled that the equal protection of the fourteenth amendment to the Federal constitution does not take from the state the right or power to classify the subjects of legislation; it is only arbitrary and unreasonable classification—classification as to which there is no just difference or distinction between the class affected and others—that is thus prohibited. *Jeffrey Mfg. Co. v. Blagg*, 235 U. S. 571. So, under the state constitution, it is likewise settled that classification for the purposes of legislation is not prohibited. The limitation imposed avoids only that which

is done without any reasonable basis; such classification as is unreasonable and arbitrary.''

In *State v. Haun*, 61 Kan. 146, 59 Pac. 340, the supreme court of Kansas had before it an act which made the basis of the classification corporations which employed ten or more persons and which act did not apply to corporations employing less than ten or more. It was there held that the classification rested upon no reasonable basis. In the course of the opinion it was said:

''The obvious intent of the act is to protect the laborer, and not to benefit the corporation. Why should not the 9 employes who work for one corporation be equally protected with the 11 engaged in the same line of employment for another corporation? If such law is beneficial to wage earners in the one instance, why not in the other? The 9 men lawfully paid for their labor in goods at a truck store might with much reason complain that the protection of the law was unequal as to them, when they saw 11 men paid in money for the same service performed for another corporation engaged in a like business. Such inequality destroys the law. In the instance cited, 2 of the 11 men might quit the employment of the company for which they worked, and by this act alone make a method of payment by the corporation lawful which was unlawful while the 11 were employed. The criminality or innocence of an act done ought not to depend on the happening of such a circumstance. Equal protection of the laws means equal exemption with others of the same class from all charges and burdens of every kind.''

That language was quoted with approval and the principle applied in *Cotting v. Kansas City Stock Yards Co.*, 183 U. S. 79. As above stated, the act purports to be, and in fact was, passed for the purpose of providing a form of security for depositors in banks. If the state is to pass a law in the exercise of the police

power which is to be given compulsory effect, there appears to be no reason why banks which are members of the system should be put in one class and those not members of the system, but eligible to become members, should be put in another class.

The next question is whether the legislature had the power, under § 1, of art. XII, of the constitution of this state, which provides that all laws relating to corporations may be altered, amended or repealed at any time, to, by the amended act, change the liabilities or obligations of the members of the system without their consent. Without attempting to define the exact scope and meaning of that constitutional provision, it may be said that it at least does not authorize the passing of a special law, but only permits the passage of a law which is general. A special law is one which relates to particular persons or things, while a general law is one which applies to all persons or things of a class, and must be so framed that all persons or things constituting a class come within its provisions. In *Young Men's Christian Association v. Parish,* 89 Wash. 495, 154 Pac. 785, it was said:

"The authorities are in substantial harmony upon the rule by which a law is to be tested to determine whether it is general or special. A special law is one which relates to particular persons or things, while a general law is one which applies to all persons or things of a class. A law is general when it operates upon all persons or things constituting a class, even though such class consists of but one person or thing; but the law must be so framed that all persons or things constituting the class come within its provisions."

Speaking upon this question, in *State ex rel. Richards v. Hammer,* 42 N. J. Law 435, it is said:

"But the true principle requires something more than a mere designation by such characteristics as will

serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject matter of the proposed legislation between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

If, then, the act, as amended, is to be construed as applying only to the member banks and be given a compulsory effect, it is not based upon a reasonable classification.

The next question is whether the respondent has been relieved from the provisions of the original law which were carried forward in the amendments. Section 2 [Laws of 1917, p. 309], of the original act is as follows:

"There is hereby created for the protection and security of depositors in banks, a fund which shall be known as the 'Washington bank depositors' guaranty fund' and shall consist (a) of securities of the face value of an amount equal to one thousand dollars ($1,-000) for every one hundred thousand dollars ($100,-000) or major fraction thereof, of the respective annual average deposits, eligible to guaranty under the provisions of this act, of each member of such fund, to be deposited as collateral for the payment of assessments made against the members of the fund: *Provided*, That no member shall furnish such collateral security in a sum less than five hundred dollars ($500); and (b) of cash equal to one-half of one per cent of the total amount of the annual average daily deposits, eligible to guaranty, of all such member banks, to be deposited with the fund by such member banks in proportion to their respective annual average daily deposits eligible to guaranty."

It will be observed that this section provides for the deposit of securities of the face value equal to one per cent of the annual average daily deposits of a bank eligible to guaranty under the provisions of the act, and for cash equal to one-half of one per cent of the total amount of the average daily deposits. That section as amended is as follows:

"Section 2. There shall be created for the protection and security of depositors in banks, a fund which shall be known as the 'Washington Bank Depositors' Guaranty Fund' and shall consist of cash equal to one per cent of the total amount of annual average deposits, eligible to guaranty, of all such member banks, to be deposited with the fund by such member banks in pro-. portion to their respective annual average deposits eligible to guaranty.

"There shall also be created a fund to be called the Contingent Fund from which shall be paid the expenses incurred by the Guaranty Fund Board and also any losses which may be sustained through the failure of any member bank. An assessment of not to exceed one-tenth (1/10) of one per cent of the average deposits eligible for guaranty for the preceding year shall be levied by the board on or before the 30th of January of each year, until such time as the Contingent Fund shall equal three per cent (3%) of all the deposits eligible for guaranty in all member banks: *Provided, however,* That within thirty days from the date upon which this act takes effect the Guaranty Fund Board shall levy an assessment of one-tenth (1/10) of one per cent of the deposits eligible for guaranty for the preceding year, which assessment shall be the only assessment made for the benefit of the Contingent Fund for the calendar year 1921. The Guaranty Fund Board may appropriate from the Contingent Fund such funds as it may deem necessary to cover the authorized expenses of the board." [Rem. Comp. Stat., § 3294.]

In this amended section there is no provision for the deposit of securities. In addition to the guaranty fund there is created what is called a contingent fund. The

guaranty fund consists of cash equal to one per cent
of the total amount of the average daily deposits.  For
the contingent fund an assessment not to exceed one-
tenth of one per cent is provided for.  Where a section
of a statute is amended by an act which purports to set
out in full all it is intended to contain, any matter which
was in the original section but not in the amendatory
section is repealed by the omission.  In 25 R. C. L. 923,
it is said:

"And where a section expressly amendatory of an-
other section of a statute purports to set out in full all
it is intended to contain, any matter which was in the
original section, but is not in the amendatory section,
is repealed by the omission."

But where an act is amended and the former act by
implication repealed, the provisions of the old law
which are substantially the same as those contained in
the new are deemed to be continued.  In *Thomas v.
Town of Butler,* 139 Ind. 245, 38 N. E. 808, it is said:

"It is true, as stated by some of the authorities above
mentioned and cited by appellant, that so far as any
operative part of the old act has been brought forward
and re-enacted by the new act, it is not repealed, and
is, as stated by Sutherland, contained in operation, as
it may operate in the connection in which it is re-
enacted.  It has been frequently held in this and other
courts, that the re-enactment of a statute does not oper-
ate as a repeal of the former law, but that the effect of
the new act is to continue the old act in force."

In 25 R. C. L. 907, it is said:

"Where an act is amended 'so as to read as follows'
the part of the original act which remains unchanged
is considered as having continued in force as the law
from the time of its original enactment and the new
portion as having become the law only at the time of
the amendment."

As already stated, there is no provision in § 2, as amended, with reference to the securities. This being true, under the rules just stated, that part of § 2 [Laws of 1917, p. 309], of the original act, not being carried forward into the amendatory act, was repealed. There being no provision of the law, as it now is, which provides that the guaranty board can hold the securities, the respondent was entitled to their return.

As to the $56,061.44 which the respondent carried as a deposit to the credit of the guaranty fund, and which was provided for in the original act by the assessment of one-half of one per cent, a like result must be reached, as there is no provision in the section, as amended, which carries forward this one-half of one per cent cash assessment. It is true that, in the amendatory act, there is a provision for the assessment of cash equal to one per cent for the benefit of the guaranty fund, but this is obviously intended as a substitute for the security provision in the original act. In any event, the provision for one per cent in the amended section is not substantially the same as the provision for one-half of one per cent in the original section. Before a provision of the original act can be deemed to be carried forward into the amendatory act, the two provisions as they respectively appear must be practically identical. In *Gull River Lumber Co. v. Lee,* 7 N. D. 135, 73 N. W. 430, it was said:

"It is a well-settled principle of law that where a statute is repealed, and the repealing statute, which goes into effect the moment the former is repealed, contains provisions identical, or practically identical, with those in the statute which is repealed, such provisions are not to be regarded as repealed, but rather as continuing in force without intermission. *Steamship Co. v. Joliffe,* 2 Wall. 450; *Wright v. Oakley,* 5 Metc (Mass.) 406. But, as stated, in order to work a con-

tinuation of such provisions, they must be practically identical in the two statutes.''

In *Nash v. White's Bank of Buffalo,* 105 N. Y. 243, 11 N. E. 946, an action had been brought to recover penalties under a usury statute. The act under which the action was brought imposed penalties for the taking of interest at any rate in excess of seven per cent per annum. Pending the action, the statute was amended so that the specified rate was reduced to six per cent. It was held that the two acts were not practically identical, and that the amended act could not be considered a continuation of the original so that the action could be prosecuted notwithstanding the amendment. It follows that, as to the $56,061.44 carried by the respondent on its books as a deposit to the credit of the guaranty fund, the appellants have no right to collect from the respondent, as the amendatory section in this respect is not practically identical with the original section.

There is still to be considered the $56,061.44 which the guaranty board assessed against the respondent on account of the depletion of the guaranty fund by reason of the failure of the Scandinavian-American Bank of Seattle. Inquiry will now be directed to determine whether the original section of the statute, with reference to this assessment, and the amendatory section, are practically identical within the meaning of the rules above applied to the other two items. Section 11 [Laws of 1917, p. 316], of the original act, among other things, provided that, in case the cash on hand in the guaranty fund should at any time be reduced by more than twenty-five per cent of the amount provided for the current year,

``  .  .  .  the board shall determine whether it is necessary or expedient to make an assessment on the member banks, to replenish such fund, before the next

ensuing annual adjustment; and in case the board shall determine that such assessment is necessary or expedient, it shall cause the same to be made in proportion to the respective average daily eligible deposits of such banks, for the preceding calendar year, and shall direct the secretary of the board to notify the member banks of the respective amounts of their assessments, and to collect the same: *Provided,* That not more than one-half of one per cent of the total amount of average daily eligible deposits of all the guaranteed banks, for the preceding calendar year, shall be so assessed in any one calendar year.''

This section, as amended, provides, among other things, that:

''The Guaranty Fund shall be adjusted each year, the member banks being charged or credited according to the amount of increase or decrease in deposits eligible to guaranty for the preceding year. Should this fund be impaired through losses or otherwise, the board may in its discretion levy an assessment of not to exceed one-half ($\frac{1}{2}$) of one per cent per annum of the deposits eligible for guaranty for the preceding year; such assessments for the benefit of the Guaranty Fund may be made only for the purpose of making good impairments of such fund. Any funds in the Guaranty Fund may be used in paying the owners of guaranteed deposits in member banks, but not until the Contingent Fund shall have been depleted.'' [Laws of 1921, p. 286, § 5.]

It will be noted that, in the original act, the board is authorized, when the guaranty fund is depleted, to make an assessment of ''not more than one-half of one per cent of the total amount of average daily eligible deposits of all guaranteed banks.'' In the amended section the board is authorized, in the event the guaranty fund is depleted, to make an assessment of ''not to exceed one-half ($\frac{1}{2}$) of one per cent per annum of the deposits eligible for guaranty for the preceding year.'' These two provisions are practically identical.

There is no substantial difference between them. The provision with reference to the assessment of one-half of one per cent in the event that the guaranty fund was depleted, as it appeared in the original act, is carried forward into the amendatory act, and under the rules of law above stated, this provision of the statute was not repealed. In this connection, one other thing should be considered. Under § 15 [Laws of 1917, p. 319], of the original act, the only method by which the collection of this assessment could be enforced was by the sale by the board of the securities which it had on deposit. Under this section, as amended, the assessments "constitute a first lien on all of the assets of said bank." It appears, therefore, that the method by which the collection of the assessment could be enforced had been changed. The amended section provided for a lien upon the assets, while in the original act the remedy was by the sale of the securities. This, however, affects the remedy only. It does not increase the burden of a member bank with reference to the amount of its assessment. The obligation in both cases is the same. The remedy by which the state may elect to enforce the collection of the assessment may be altered according to its will, providing the alteration does not add new burdens or obligations. In *Woodbury v. Grimes*, 1 Colo. 100, it was said:

"It is, indeed, 'manifest that the obligation of a contract and the rights of a party under it may, in effect, be destroyed by denying a remedy altogether, or may be seriously impaired by burdening the proceedings with new conditions and restrictions so as to make the remedy hardly worth pursuing.' Bearing in mind that 'whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract,' we proceed to inquire whether the act of 1864

gave a remedy, of which the legislative assembly could deprive the plaintiffs in error without impairing the obligation of the contract."

The respondent has no ground for complaint because the state has elected to change the remedy by which it will collect the assessment in the event that the respondent does not meet its obligation without compulsion.

The respondent claims the right to escape all liability under the act and invites us to apply that rule of law which is operative between individuals, and which is to the effect that, if one party manifests an intention in unequivocal language not to perform the conditions of a contract unless new terms are made a part thereof, this amounts to a breach and the other party may elect to rescind. It has been the position of the respondent, ever since the amendatory act was passed, that it was relieved from all obligations because the state was seeking to enforce certain provisions which were not contained in the original act under which it voluntarily became a member of the system. We are not convinced that the rule which the respondent invokes is applicable to the present situation. The state, in passing this law and creating the guaranty fund, was not acting in a private or proprietary capacity. It was attempting to do something which it could only do in the exercise of the police power. It is true that, in a sense, the arrangement under which a bank becomes a member of the association is in effect an agreement between it and the guaranty fund board, but notwithstanding this fact, we are of the opinion that the strict doctrine of the rescission of contracts between individuals, where one party refuses to perform unless new terms are consented to by the other, should not be applied in a case of this kind.

The trial court was in error in entering a judgment forbidding the appellants to collect the $56,061.44 which the guaranty fund board assessed against the respondent on account of the depletion of the guaranty fund by reason of the failure of the Scandinavian-American Bank of Seattle.

The judgment will be modified and the superior court directed to enter a judgment in accordance with the views expressed herein.

HOLCOMB, PARKER, MITCHELL, PEMBERTON, MACKINTOSH, TOLMAN, and BRIDGES, JJ., concur.

FULLERTON, J. (dissenting)—I am compelled to dissent from the conclusions reached by the majority in the foregoing opinion. Since, however, all of my brothers have joined therein, I feel that it would be a useless task to express the reasons for my conclusion at length. Briefly, I will say that it is my opinion that the original act was, on all of the essentials, superseded by the amendatory act, and that this conclusion requires a different result from that reached by the majority.