[No. 23366.   Department Two.   September 24, 1931.]

VERNE C. HENRY, *as Executor, Respondent,* v. JOHN R. McKAY, *Treasurer of Snohomish County, Appellant.*[1]

[1]Reported in 3 P. (2d) 145.

*Charles R. Denney,* for appellant.

*The Attorney General* and *John A. Homer, Assistant, Amici Curiae.*

MILLARD, J.—The general tax code (ch. 130, p. 227, Laws of 1925, Ex. Ses., Rem. 1927 Sup., §§ 11097-1 *et seq.*) passed by the Legislature in 1925, was a complete re-enactment and revision of the laws regulating the assessment, levy and collection of taxes. Section 83 of that code (Rem. 1927 Sup., § 11097-83) provided that all taxes upon real property became due and payable on or before May thirty-first in each year; that after that date the taxes were delinquent, and interest at the rate of twelve per cent per annum upon such unpaid taxes from the date of delinquency until paid was required of the delinquent property-owner. The section further provided that, if payment were made of one-half of the tax on or before May thirty-first, the time for payment of the remainder of the tax would be extended and would not become delinquent if paid on or before the thirtieth of the following November. Section 83 reads as follows:

"The county treasurer shall be the receiver and collector of all taxes extended upon the tax rolls of the county, whether levied for state, county, school, bridge, road, municipal or other purposes, and also of all fines, forfeitures or penalties received by any person or officer for the use of his county. All taxes upon real property made payable by the provisions of this act shall be due and payable to the treasurer as aforesaid on or before the thirty-first day of May in each

year, after which date they shall become delinquent, and interest at the rate of twelve per cent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid: *Provided, however,* When the total amount of tax payable by one person is two dollars or more, then if one-half of such taxes be paid on or before said thirty-first day of May, then the time of payment of the remainder thereof shall be extended and said remainder shall be due and payable on or before the thirtieth day of November following; but if the remaining one-half of such taxes be not paid on or before the thirtieth day of November, then such remaining one-half shall be delinquent, and interest at the rate of twelve per cent per annum shall be charged thereon from the first day of June preceding until paid: *Provided, further,* There shall be an allowance of three per cent rebate to all payers of taxes who shall pay the taxes on real property in one payment and in full on or before the fifteenth day of March next prior to the date of delinquency. All rebates allowed under this section shall be charged to the county current expense fund and all collections from penalties and interest on delinquent taxes shall be credited to the current expense fund."

The foregoing section was amended by chapter 113, Laws of 1931, p. 341, as follows:

"Section 1. That section 83 of chapter 130 of the Laws of the Extraordinary Session of 1925 (section 11097-83 of Remington's Compiled Statutes, 1927 Supplement) be amended to read as follows:

"Section 83. The county treasurer shall be the receiver and collector of all taxes extended upon the tax rolls of the county, whether levied for state, county, school, bridge, road, municipal or other purposes, and also of all fines, forfeitures or penalties received by any person or officer for the use of his county. One-half of all taxes upon real property made payable by the provisions of this act shall be due and payable to the treasurer as aforesaid on or before the thirty-first day of May in each year, after which date such one-half shall become delinquent, and interest at the rate of ten per cent per annum shall be charged upon such

unpaid taxes from the date of delinquency until paid; the other one-half of such taxes shall be due and payable to the treasurer as aforesaid on or before the thirtieth day of November in each year, after which date such remaining one-half shall become delinquent, and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid: *Provided, however,* When the total amount of tax payable by one person is two dollars or less, then all of such taxes shall be due and payable to the treasurer as aforesaid on or before the thirty-first day of May in each year, after which they shall become delinquent, and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid: *Provided, further,* There shall be an allowance of three per cent rebate to all payers of taxes who shall pay the taxes on real property in one payment and in full on or before the fifteenth day of March next prior to the date of delinquency. All rebates allowed under this section shall be charged to the county current expense fund and all collections from penalties and interest on delinquent taxes shall be credited to the current expense fund.''

The 1931 amendment, which went into effect at midnight June 10, 1931, provides that only one-half of all taxes upon real property shall be due and payable on or before the thirty-first day of May in each year. After that date one-half becomes delinquent and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from date of delinquency (June 1st) until paid. The other one-half of such taxes becomes due and payable on or before the thirtieth day of November in each year, after which date such remaining one-half becomes delinquent and interest at the rate of ten per cent per annum shall be charged on such unpaid taxes from date of delinquency (December 1st) until paid.

On July 10, 1931, one month subsequent to the date

the 1931 amendment became effective, the plaintiff executor tendered to the treasurer of Snohomish county the full amount of the real property tax levied against the estate of Mercy B. Ford, deceased, for the year 1928, plus interest thereon to date of tender at the rate of ten per cent per annum on one-half from June 1, 1929, and on the other half from December 1, 1929; and tendered in payment of the 1930 tax one-half of the full amount of that tax plus interest to the date of the tender at the rate of ten per cent from June 1, 1931.

The treasurer rejected the tender on the ground that the amount of interest tendered on the 1928 tax did not include interest at the rate of twelve per cent per annum on the entire tax from June 1, 1929, to June 11, 1931, and at the rate of ten per cent from June 11, 1931, to date of tender. The tender of the 1930 tax was refused by the treasurer for the reason that the tender did not include interest from June 1, 1931, to June 11, 1931, at twelve per cent instead of at ten per cent; and on the further ground that he was not authorized to accept payment of one-half of the 1930 tax at the time the tender was made.

Plaintiff instituted proceedings in the superior court for Snohomish county for a writ of mandate requiring the county treasurer to accept the money tendered in full payment for taxes levied for the year 1928 and as payment for the first half of the taxes levied for the year 1930. The demurrer to the complaint was overruled. Defendant refused to plead further, whereupon an order was entered directing the issuance of a writ of mandate requiring the treasurer to receive in full payment of the taxes and interest the amounts tendered by the plaintiff. The defendant has appealed.

Appellant contends that the 1928 delinquent taxes should bear interest at the rate of twelve per cent from

June 1, 1929, until June 11, 1931 (the date the 1931 amendment went into effect), and should bear ten per cent interest after that date; that the entire amount of the 1930 taxes should bear interest at the rate of twelve per cent from June 1, 1931, to June 11, 1931 (the date the amendment became effective), and that, from and after June 11, 1931, one-half of the 1930 taxes should bear interest at the rate of ten per cent per annum. It is argued that statutes are not retroactive unless they expressly so provide; that there is nothing in the amendatory statute providing that it shall operate retrospectively; and that to sustain the trial court's interpretation of chapter 113, Laws of 1931, p. 341, is to make the statute retroactive in its effect; and that

"It is true that to interpret the law as the trial court has done is to merely make the provisions of the present law applicable to all taxes; but surely the rate of interest of twelve per cent which was the law until June 11, 1931, attached to those taxes and is payable even after the new law went into effect. Appellant does not contend that the Legislature does not have the power to reduce the interest upon back taxes, but it is appellant's contention that the Legislature has not done so by chapter 113 of the Laws of 1931."

Section 83 of the 1925 tax code (Rem. 1927 Sup., § 11097-83) provided that all taxes upon real property should become due and payable on or before May thirty-first in each year; that, after such date, the taxes became delinquent, and interest at the rate of twelve per cent per annum was to be charged upon such unpaid taxes from the date of delinquency until paid; that, when the tax was in excess of two dollars, if one-half of the tax were paid on or before the thirty-first day of May, the time for payment of the remainder would be extended and would not become delinquent if paid on or before the thirtieth day of the following

November. The 1931 amendment of that section provides that only one-half of all taxes upon real property shall be due and payable to the treasurer on or before May thirty-first in each year; that, after that date, such one-half shall become delinquent and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from date of delinquency until paid; that the other one-half of such taxes shall be due and payable to the treasurer on or before the thirtieth day of November in each year, after which date such remaining one-half shall become delinquent and interest at the rate of ten per cent shall be charged on such unpaid taxes from date of delinquency until paid.

That is, the statute, as amended, does not provide, as did the original act, that *all* taxes shall become delinquent on June 1st and that interest shall be charged on the entire tax from June 1st. The amendatory act provides that only one-half of all taxes shall be due and payable on or before May thirty-first in each year. After that date, the tax becomes delinquent and interest at the reduced rate of ten per cent per annum shall be charged upon such unpaid tax from the date of delinquency until paid. The other one-half of the tax shall be due and payable on or before November thirtieth, after which date such remaining one-half becomes delinquent and interest at the rate of ten per cent per annum shall be charged upon the unpaid tax from the date of delinquency until paid.

We agree with respondent that the treasurer is not concerned with the amount of interest chargeable against any delinquent tax until the taxpayer tenders payment. When a tax is levied for any year, the amount of the tax is entered upon the tax roll; and when the tax is paid an entry is made showing the payment on the roll. There is no reason for entering

the interest charge upon the roll until payment of the tax, no matter how long the tax remains unpaid. Not until payment is tendered is there any occasion for the treasurer to examine the statute to ascertain what rate of interest should be charged. Otherwise, there would be a daily, weekly, or monthly (or some other fixed period) computation and entry of interest due on delinquent taxes.

The provision exacting payment of interest for delinquency in the payment of taxes does not make the interest a part of the tax, but pertains to the remedy employed to compel payment of the tax when due. The legislative power to exact from a property-owner interest for delay in discharging his obligation is upheld upon the ground—a proposition which needs no citation of sustaining authority—that the sovereign, the state, has the authority to tax the property. Though the state adopted new remedies for the collection of taxes, and applied those remedies to taxes already delinquent, such retrospective operation of the statute would not be a violation of the constitutional (state or Federal) rights of the property-owner. Delinquent taxes do not bear interest unless so provided by statute. *New Whatcom v. Roeder*, 22 Wash. 570, 61 Pac. 767; Cooley on Taxation (4th ed.), § 1274. In *New Whatcom v. Roeder, supra*, we said:

"A tax is not a debt and does not bear interest unless imposed by statute . . . In tax laws penalties proper and interest charges are imposed for mere delinquencies in order to hasten payment. The general law of the state imposes this charge as a penalty for neglect to pay the tax in due season."

The statute makes the county treasurer the receiver and collector of all taxes extended upon the rolls, and provides that, after a tax becomes delinquent, "interest at the rate of ten per cent per annum *shall be charged*

upon such unpaid taxes from the date of delinquency until paid." That language means nothing more than that, until payment of the tax is tendered, or until the treasurer is about to collect the tax, he is not concerned with the rate of interest that should be charged upon the tax. By the statute, the treasurer is directed that, when the tax is tendered, he shall charge interest on one-half from June 1st and on the other half from December 1st, the delinquency dates, to the date of payment. The treasurer should look, not to the old act, but to the statute in force at the time of the tender, for computing the interest chargeable on the delinquent tax.

Chapter 113, Laws of 1931, p. 341, specifically amends a designated section (§ 83) of a general act "to read as follows." The adoption of the amendatory statute is in effect a repeal of the act amended.

"An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute. Repugnancy is not the essential element of implied repeal of specifically amended sections. The rule is: 'Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there.' 25 R. C. L. 907." *People v. Lowell,* 250 Mich. 349, 230 N. W. 202.

"Where a section of a statute is amended by an act which purports to set out in full all it is intended to contain, any matter which was in the original section but not in the amendatory section is repealed by the omission." *Spokane & Eastern T. Co. v. Hart,* 127 Wash. 541, 221 Pac. 615.

Section 83 of the 1925 tax code was repealed by the amendatory statute of 1931, hence it may not be considered by the treasurer in determining the amount of interest which he is to charge when the tax is paid. If the statute requiring the payment of interest for

delay in discharging the tax obligation were repealed, interest could not be exacted of the property-owner when he paid the delinquent taxes, as the penalty would be gone.

We agree that a repeal could not affect rights which had vested under the repealed law. However, if it be argued that the rights of the state, the public, had become vested under § 83 of the 1925 code prior to its amendment by the 1931 statute, it is a sufficient answer to say that the state, the same as an individual, could waive its rights. The state may relieve the delinquent taxpayer from the payment of interest or may waive the penalty previously provided for delay in payment of taxes. The state could, through the legislature, release the delinquent property-owner from liabilities due to the state and make the statute retrospective in its operation. There would be no impairing of the obligation of a contract. Taxes are not imposed by contract. The state may pass such retroactive laws as only waive the state's right without violating the constitution. Black's Constitutional Prohibitions, § 221. Surely, if the state may waive the penalty in its entirety, it logically follows that the state may change the interest rate on delinquent taxes.

In *League v. Texas,* 184 U. S. 156, a statute requiring the payment of interest on taxes already delinquent, from the time such delinquency commenced, was upheld as against the objection that the statute was retroactive. The court said:

"That a State may adopt new remedies for the collection of taxes and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution, is not a matter of doubt. A delinquent taxpayer has no vested right in an existing mode of collecting taxes. There is no contract between him and the State that the latter will not vary the mode of collection. Indeed, generally speaking, a party has no

vested right in a mere matter of remedy; that is subject to legislative change. And a new remedy may be resorted to unless in some of its special provisions a constitutional right of the debtor or obligor is infringed. 'There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection.' *Backus v. Fort Street Union Depot Co.*, 169 U. S. 557, 570. . . . and a delinquent taxpayer, one who fails to discharge his obligations to the State, compelling it to go into court to enforce payment of the taxes due upon his land, has no ground of complaint because he is charged with the ordinary fees and expenses of a law suit.

"While the matter of interest stands upon a little different basis, yet, so far as the Federal Constitution is concerned, there is nothing to prevent its collection. The statute may be retroactive, but a statute of a State is not brought into conflict with the Federal Constitution by the mere fact that it is retroactive in its operation. In *Baltimore & Susquehanna Railroad Co. v. Nesbit,* 10 How. 395, 401, it was said:

" 'That there exists a general power in the state governments to enact retrospective or retroactive laws, is a point too well settled to admit of question at this day. The only limit upon this power in the States by the Federal Constitution, and therefore the only source of cognizance or control with respect to that power existing in this court, is the provision that these retrospective laws shall not be such as are technically *ex post facto,* or such as impair the obligation of contracts. Thus, in the case of *Watson et al. v. Mercer,* 8 Pet. 110, the court say: "It is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws. Now, it has been solemnly settled by this court that the phrase *ex post facto* is not applicable to civil laws, but to penal and criminal laws."

For this position is cited the case of *Calder v. Bull,* already mentioned; of *Fletcher v. Peck,* 6 Cranch, 138; *Ogden v. Saunders,* 12 Wheat. 266; and *Satterlee v. Matthewson,* 2 Pet. 380.'

"This decision, it is true, was before the Fourteenth Amendment, and the restrictions placed by that amendment upon state action apply to retrospective as well as prospective legislation. But it contains no prohibition of retrospective legislation as such, and therefore now, as before, the mere fact that a statute is retroactive in its operation does not make it repugnant to the Federal Constitution.

"As the State may, in the first instance, enact that taxes shall bear interest from the time they become due, so, without conflicting with any provision of the Federal Constitution, it may in like manner provide that taxes which have become delinquent shall bear interest from the time the delinquency commenced. This is adding no novel or extraordinary penalty, for interest is the ordinary incident to the non-payment of obligations."

In *Webster v. Auditor General,* 121 Mich. 668, 80 N. W. 705, a statute changing the interest rate on delinquent taxes was sustained, the court holding that one owing delinquent taxes has no vested right to have the rate of interest thereon remain unchanged. By the 1899 statute, § 59 of the tax law of 1893 was amended, changing the rate of interest payable on delinquent taxes from eight per cent per annum to one per cent per month, and increased the charge for advertising from seventy cents to one dollar. In holding that the 1899 statute applied to all taxes delinquent at the time of such enactment, the court said:

"The provisions of the law of 1893, up to section 59, remain substantially as they were prior to the amendment. They relate to the assessment, levy, and collection of the taxes, and to the return of the land for delinquent taxes. All these things were to be done in substantially the same way subsequent to the amendment as they had before. There is no suggestion in

section 59, as amended, that it was to apply only to lands thereafter assessed and returned, but it provides, not only as to those lands, but 'on any land returned as aforesaid,' that any person may pay the tax, with the interest and fees provided for in the amended section. Had the legislature intended the amended section should apply only to future assessments, it would have been easy to say so; but, as they have not done so, if we are to construe the law according to its terms as it now reads, it is difficult to come to any other conclusion than that it was intended to apply to all lands upon which the taxes had not been paid. It is urged that, if this is the construction to be given to the law, the law is invalid, as interfering with vested rights.

. . .

"In *People v. Saginaw County Treasurer,* 32 Mich. 260, it was held that the law of 1871 in relation to the redemption of lands sold for taxes was amended by the law of 1875, and—

" 'That the amended section took the place of and repealed the original one, and, being the only act in force providing for redemption, it must govern; that it must be assumed that such was the intention of the legislature, as the only alternative would be to infer an intention to cut off all right of redemption as to prior sales, which would not only be contrary to the uniform State policy in that regard, and therefore not to be deduced by slight inference, but it would affect injuriously the rights of those who before were entitled to redeem.'

"That case is on all fours with the present, except in that case the law of 1875 reduced the amount requisite to redeem, while in the present the law of 1899 increases it. That case must be held to rule this case, provided the legislature had the power to make the change. The latter question is ruled by *Muirhead v. Sands,* 111 Mich. 487. See, also, *Humphrey v. Auditor General,* 70 Mich. 292.

"The relator urges that section 125 of the tax law of 1893 negatives the idea that the law is retroactive. It reads as follows:

" 'All rights which may have accrued to any person, as well as all rights which have accrued or become

vested in any individual corporation, municipality, or the State, under any of the heretofore existing tax laws of the State which have been amended, modified, changed, or repealed, shall not be affected, changed, or destroyed, but the same shall remain in force, subject to review and enforcement in the courts of this State, and for the completion of all proceedings heretofore begun for the collection of taxes or the enforcement of all the requirements of such laws.'

"It was doubtless the purpose of this section to make the provisions of the law of 1893 prospective, rather than retroactive; but, in view of the fact that no mention was made in the title of the act of 1899 of this section, when section 59 of the law of 1893 was amended, and the further fact that section 125 was not re-enacted, it is difficult to see how it gives to the language used in section 59 any other meaning than would be drawn from the wording of the section itself.

"It is the duty of the landowner to pay his taxes, and to pay them when they become due. Incidental to the power to tax is the power to enforce payment. Because the State has been liberal in making provision for the redemption of the lands from the lien created by the tax, it does not follow it cannot change the terms upon which the lands can be redeemed. See *Muirhead v. Sands,* 111 Mich. 487. We do not think it can be longer said in this State that the taxpayer has a vested right to have the interest charged in order to redeem remain at the same rate it was when the land was assessed, so long as he chooses to be delinquent in the payment of his taxes. It is, as we have shown, within the power of the legislature to change the rate of interest due from the relator and all others in his position. By the amendment to section 59 it has done so."

*Town of Belvidere v. Warren R. Co.,* 34 N. J. Law 193, is not, on principle, distinguishable from the case at bar. A New Jersey statute authorizing the laying of a tax was repealed after an assessment of such tax but before its collection. The same statute imposed a penalty of twelve per cent on failure to pay the tax

assessed. Action was brought by the town of Belvidere to compel the railroad company to pay the tax and the penalty of twelve per cent interest thereon. On appeal, the court held that the repeal did not prevent the collection of the tax, such collection being regulated by the general tax law, which remained unrepealed; that the penalty could not be collected after the repeal of the statute, the rule being that the assessment of the tax was a thing past and completed and could not be affected by the repeal; contra, with respect to the penal percentage. The court said:

"As the tax now in controversy was assessed during the existence of the act of 1862, and as the proceedings for its collection do not depend on that act, my conclusion is, that the subsequent repeal of that statute cannot, on general principles, invalidate such assessment. . . .

"But, in the second place, it is said that, waiving all defence to the tax itself, there is no legal ground on which the twelve per cent interest can be exacted.

"By the plain terms of the statute this is designed as a punishment. The language is, 'that if any person or corporation shall neglect or refuse to pay the tax due from such person or corporation, by the time appointed by law for payment of the same, such delinquent shall pay interest on said tax at the rate of twelve per cent. per annum upon the amount of such tax from the time of such delinquency until such tax be paid,' etc. I can have no doubt that this is a pain denounced for delinquency. It does not appear that any effort has been heretofore made to collect it, or any part of it. . . . Can this penal sum be recovered after the repeal of the act which awards it?

"It will be observed that this demand cannot rest on any of the grounds upon which the right to the body of the tax has been placed. Before the repeal of the law, nothing was done with respect to it; hence, it cannot be regarded, in the faintest degree, as a transaction ended or closed during the running of the statute. I have already said it stands unaffected by

any judgment. If it is to be sustained, other principles must be superinduced than those which have been applied in support of the tax itself.

"The general principle of the law on the subject is entirely clear. The repeal of a penal statute puts an end to all prosecutions under it. Sedg. on Stat. Const. Law 129. . . .

"In view of this rule, I have not been able to perceive any ground on which to sustain this demand for this penal interest. It has always been held that interest does not inhere in a tax as a legal incident. *City of Camden v. Allen,* 2 Dutcher 399. This twelve per cent has no existence, then, except by virtue of the act of 1862, and when that act was repealed, it fell with it. If that statute, instead of directing its collection by force of the tax warrant, had authorized a suit to be brought, such suit, by the repeal of the act, according to the cases referred to, would have fallen in any of its stages anterior to final judgment. The reason for this, given in the books, is, that at the time of judgment a right to the penalty must exist, which cannot be the case unless the statute is alive which created it. It is not to be denied that this same objection applies with full force at the present time when this court is asked to compel the payment of this penalty, which, under existing circumstances, has no statutory basis whatever. My first impression was, that this interest might be regarded as a mere incident to the tax, and that in this mode its existence might be continued. But the defects of this theory are twofold: first, the twelve per cent is a penalty, and not a mere incidental part of the sum to be paid; and, in the next place, even if it should be regarded as an incident, it is altogether a statutory incident, and consequently would expire with the law from which it proceeded."

■ Chapter 113, Laws of 1931, p. 341, provides for the dates of payment of the tax. That statute does not provide for the creation of the tax. The tax is created by other provisions of chapter 130, Laws of 1925, Ex. Ses., p. 227, Rem. 1927 Sup., §§ 11097-1 *et seq.,* and § 83 is only one of the numerous sections of that chap-

ter by means of which the tax comes into being. Manifestly, then, the language of amendatory chapter 113 that "one-half of all taxes made payable by the provisions of this act" means one-half of all taxes made payable by the provisions of chapter 130, Laws of 1925, Ex. Ses., of which § 83 was a section; and that the words "this act" as used in the amendatory statute do not refer to chapter 113 of the Laws of 1931, but to chapter 130 of the Laws of 1925, Ex. Ses. We agree with the respondent that any tax involved in the case at bar would be a tax created and made payable by the provisions of the act of 1925 and not by the provisions of the 1931 statute.

*Security Savings Society v. Spokane County,* 111 Wash. 35, 189 Pac. 260, does not support the position of appellant. In that case, we considered the effect of chapter 142 of the Laws of 1917, p. 582, by which the rate of interest on delinquent taxes was changed from fifteen per cent to twelve per cent. The trial court held, and the judgment was affirmed on appeal, that, though a certificate of delinquency provided that it should bear fifteen per cent interest under the laws in effect at the time it was issued, the certificate should not bear fifteen per cent interest after an amendatory law became effective reducing the rate of interest to twelve per cent. The only point decided in that case was that the certificate should not bear interest at fifteen per cent after the date when the amendatory act took effect. The question whether the certificate should bear interest at the rate of twelve per cent from the date of its issue was not raised in that case.

The judgment is affirmed.

TOLMAN, C. J., BEELER, PARKER, and BEALS, JJ., concur.