135 P.3d 714

**Joyce–Marie BRUNET, as Personal Representative of the Estate of Conway Hubert Peter Brunet, Deceased, Plaintiff–Appellant,**

v.

**Edward G. MURPHY, D.O. and Jane Doe Murphy, husband and wife; Thoracic Cardiovascular Associates, Ltd., an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CV 05–0271.**

Court of Appeals of Arizona,
Division 1, Department B.

May 30, 2006.

As Corrected July 6, 2006.

Treon Aguirre & Newman PA by Thomas M. Ryan, Arthur G. Newman, Jr., Phoenix, Attorneys for Plaintiff–Appellant.

MacBan Law Offices by Laura V. MacBan, James D. Campbell, Tucson, Attorneys for Defendants–Appellees.

## OPINION

SNOW, Judge.

¶ 1 Joyce–Marie Brunet, as personal representative of the estate of Conway Brunet, appeals from the trial court's grant of summary judgment to Edward G. Murphy, D.O. and Thoracic Cardiovascular Associates, Ltd. (collectively "Murphy"). Because Arizona Revised Statutes ("A.R.S.") section 1–249 (2002) provides that no accrued right is affected by the repeal of that right, the trial court erred in barring the estate's claim. We thus reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Mr. Brunet was admitted to John C. Lincoln hospital on October 23, 2000 by Dr. Murphy for pain and impaired circulation in his right foot. Surgery on Mr. Brunet's leg was unsuccessful in restoring his circulation. He subsequently developed gangrene which required Dr. Murphy to amputate his right leg below the knee.

¶ 3 On November 11, 2000, Mr. Brunet was transferred to Health South, a physical therapy and rehabilitation center. Upon his arrival, Health South noted that Mr. Brunet was suffering from significant bed sores.

¶ 4 Nearly two years later on September 13, 2002, Mr. Brunet filed a complaint naming J.C. Lincoln Hospital–Deer Valley and John C. Lincoln Hospital & Medical Center as defendants under Arizona's medical negligence act, A.R.S. § 12–561 (2003). In his complaint, Mr. Brunet alleged that his bed sores resulted from the negligent care he received at John C. Lincoln Hospital. In January 2003, Mr. Brunet amended his complaint to bring a cause of action against the hospital under the Adult Protective Services Act ("APSA"), A.R.S. §§ 46–451 to –457 (1998). He claimed that the hospital "by knowingly and/or negligently hiring, retaining, training and/or supervising their agents, servants and or employees which was the proximate cause of [Mr. Brunet's] injuries, [deprived Mr. Brunet] of the protection afforded [Mr. Brunet] under this act."

¶ 5 Later in 2003, the legislature amended the APSA to limit those who could be sued under the act.[1] That amendment became effective on September 18, 2003. Before the amendment, A.R.S. § 46–455(B) (1998) provided that an incapacitated or vulnerable adult could sue "*any person* ... that has been employed to provide care ... to such incapacitated or vulnerable adult." (Emphasis added.) The amendment, however, expressly prohibits actions against licensed physicians unless they were employed or retained by one of the care facilities designated in the statute or were the primary provider of the plaintiff's medical services at one of those facilities. A.R.S. § 46–455(B) (2003). The amendments thus eliminated the right under the APSA to sue physicians unless they belonged to one of the limited categories designated by the statute. A.R.S. § 46–455(B).

¶ 6 Approximately four months after the amendment became effective, Joyce–Marie Brunet, as personal representative of Mr. Brunet's estate,[2] filed a Second Amended Complaint seeking to add Dr. Murphy, Thoracic Cardiovascular Associates Ltd., Charles Bell, D.O., and American Physicians, Inc., as

---

1. Section 46–455(B) (Supp.2005) now provides:

   An incapacitated or vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such incapacitated or vulnerable adult for having caused or permitted such conduct. A physician licensed pursuant to title 32, chapter 13 or 17, a podiatrist licensed pursuant to title 32, chapter 7, a registered nurse practitioner licensed pursuant to title 32, chapter 15 or a physician assistant licensed pursuant to title 32, chapter 25, while providing services within the scope of that person's licensure, is not subject to civil liability for damages under this section unless either:
   1. *At the time of the events giving rise to a cause of action under this section*, the person was employed or retained by the facility or designated by the facility, with the consent of the person, to serve the function of medical director as that term is defined or used by federal or state law governing a nursing care institution, an assisted living center, an assisted living facility, an assisted living home, an adult day health care facility, a residential care institution, an *adult care home*, a skilled nursing facility or a nursing facility.
   2. *At the time of the events giving rise to a cause of action under this section*, all of the following applied:
      (a) *The person was a physician licensed pursuant to title 32, chapter 13 or 17, a podiatrist licensed pursuant to title 32, chapter 7, a registered nurse practitioner licensed pursuant to title 32, chapter 15 or a physician assistant licensed pursuant to title 32, chapter 25.*
      (b) The person was the primary provider responsible for the medical services to the patient while the patient was at one of the facilities listed in paragraph 1 of this subsection. (Emphasis added.)

2. Mr. Brunet passed away on November 11, 2003.

defendants under an APSA claim.[3] The estate subsequently dismissed all medical negligence claims against defendants leaving the APSA claim as the estate's only claim against appellees.

¶7 Murphy then filed a motion for summary judgment arguing that he and his professional corporation could not be liable under the APSA as amended because neither fits into the class of health care providers subject to liability under the amendment. The court granted summary judgment in Murphy's favor, finding "express legislative intent to apply the amended statute to accrued but unfiled causes of action." The estate timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶8 We review an appeal from grant of summary judgment de novo. *Kosman v. State*, 199 Ariz. 184, 185, ¶5, 16 P.3d 211, 212 (App.2000).

¶9 On appeal, the estate argues that application of the amended statute to bar the estate's claim against Murphy would be a retroactive application of the statute prohibited by A.R.S. § 1–244 (2002). Second, the estate argues that its right to bring an APSA claim against Murphy accrued before the statute was amended. Thus, pursuant to A.R.S. § 1–249, this accrued right could not be affected by a subsequent repealing act. We address these arguments in turn.

**A. A.R.S. § 1–244 Does Not Apply to the Estate's Claim Against Murphy Because the Amendment Was Not Retroactively Applied.**

■ ¶10 In dismissing the cause of action below, the trial court found that A.R.S. § 46–455 explicitly authorized retroactive applica-

tion of the amendment to matters that preexisted its effective date.[4] We need not decide that question, however, because under existing Arizona law the amended APSA was not retroactively applied to Brunet's claim.

¶11 The amendment barring the claim against appellees was not retroactively applied because the estate did not file an APSA claim against appellees until after the APSA had been amended to eliminate APSA claims against persons in Dr. Murphy's position. Because the estate's claim against Murphy was not vested at the time the amendment became effective, the amendment was not retroactively applied.

¶12 *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 717 P.2d 434 (1986) demonstrates that A.R.S. § 1–244 has no application in this circumstance. In *Hall*, the plaintiff, Dallas Hall, alleged that he was injured by the negligence of defendant A.N.R. Freight System, Inc. *Id.* at 131, 717 P.2d at 435. In its answer, A.N.R. denied negligence and alleged contributory negligence. *Id.* Although the accident occurred prior to the effective date of the Uniform Contribution Among Tortfeasors Act, Hall filed his suit after the Act became effective. *Id.* at 132, 717 P.2d at 436. The Act significantly impaired the effectiveness of contributory negligence as a defense.[5] The relevant question thus posed in *Hall* was whether A.N.R. could assert the defense of contributory negligence as it existed at the time the accident occurred but before the suit was filed, or whether it was obliged to assert the defense as defined in the UCATA. *Id.* at 137, 717 P.2d at 441.

■ ¶13 In deciding when a right vests, the *Hall* court drew an explicit distinction between when a right accrues and when it vests. A right, even though accrued, does not vest until "the right to enjoyment, pres-

---

**3.** American Physicians and John C. Lincoln Hospital have been subsequently dismissed from this litigation. The estate filed an application for entry of default judgment against Dr. Bell for failure to respond to the complaint. On March 29, 2005, the court entered a Rule 54(b) judgment in favor of Dr. Murphy and Thoracic Cardiovascular Associates only.

**4.** A.R.S. § 1–244 specifies that "[n]o statute is retroactive unless expressly declared therein."

**5.** "Prior to the Act the plaintiff's contributory negligence, even if slight, could operate as an absolute bar to the plaintiff's right of recovery in a negligence action. 'After the Act, however, slight negligence by plaintiff will not bar his damage action....' " *Id.* at 132, 717 P.2d at 436 (quoting *Cheney v. Superior Court*, 144 Ariz. 446, 448, 698 P.2d 691, 693 (1985)).

ent or prospective, has become the property of some particular person or persons as a present interest." *Id.* at 140, 717 P.2d at 444. Thus, until the holder of the accrued right chooses to assert it, the right is subject to an "event that may prevent [its] vesting," such as the running of the statute of limitations or a change in the law by the legislature. *Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1913) (rights "are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting"). "The filing of an action is clearly not synonymous with its accrual, since lawsuits may be filed months or even years after the litigated events occur." *Hall* at 137, 717 P.2d at 441 (citation omitted).

¶ 14 If a right is not vested, abrogation of that right does not amount to a *retroactive* abrogation. " 'The rule is that any right conferred by statute may be taken away by statute before it has become vested.' " *Id.* at 138, 717 P.2d at 442 (quoting *In re Dos Cabezas Power Dist.,* 17 Ariz.App. 414, 418, 498 P.2d 488, 492 (1972) (plaintiffs had no vested right to formation of second water district despite initial compliance with statutory provisions because formation had not been approved by a final vote thus legislative amendment effectively repealed their right to form such a district)); *see also Gattis v. Gravett,* 806 F.2d 778, 781 (8th Cir. 1986) ("[T]he legislature which creates a property interest may rescind it ... whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections.").

¶ 15 After surveying several Arizona cases discussing this point, the *Hall* court concluded, "[t]he clear import of *Abrams [v. Horizon Corp.,* 137 Ariz. 73, 669 P.2d 51 (1983)], like *Bouldin [v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979)], is that 'an earlier established substantive right', [sic] once vested by the filing of a lawsuit, may not be impaired.... As with *Crawford [v. Superior Court in and for Pima Cty.,* 144 Ariz. 498, 698 P.2d 743 (App. 1984)] the date we identified as controlling was the filing date." 149 Ariz. at 141, 717

P.2d at 445 (citations omitted). The *Hall* Court further noted that "[w]hen a lawsuit is commenced the defendant gains 'an immediate fixed right' to assert any substantive defense, which may not thereafter be prejudiced by the state. Until then, however, assertion of contributory negligence is" not a vested right, and thus can be abrogated. *Id.* at 140, 717 P.2d at 444 (citation omitted). Thus A.N.R. could not assert the defense of contributory negligence as it existed at the time the accident occurred because A.N.R. had no vested right to the defense until the suit was filed. *Id.* at 140, 717 P.2d at 444.

¶ 16 In this case, as in *Hall,* the estate did not gain "an immediate fixed right" to assert its claim against Murphy until the estate filed that claim. Because the estate filed no such claim until after the statutory amendment eliminating the claim became effective, the amendment abrogated the claim before the estate had any vested right to it. The amendment thus did not operate retroactively in divesting the estate of its claim.

¶ 17 On the other hand, the estate contends that *Hall* is distinguishable because the statute in *Hall* expressly provided for retroactive operation while the amendment to A.R.S. § 46–455 did not so expressly provide. However, here, as in *Hall,* there is no retroactive operation to begin with because the estate had no vested rights *prior to the time the amendment was passed.* It does not matter whether the statute explicitly authorized a retroactive application because there was no retroactive application of the amendment in this case. We thus hold, as did the trial court, that A.R.S. § 1–244 does not apply to this case.

**B.  A.R.S. § 1–249 Prevents the Elimination of the Estate's Accrued Cause of Action.**

¶ 18 An inquiry whether a statute is or may be retroactively applied pursuant to A.R.S. § 1–244 is a separate inquiry from whether a right has accrued and is thus protected by A.R.S. § 1–249 from abrogation by statutory repeal.[6] The estate contends that A.R.S. § 1–249 protects its right to as-

---

**6.** Neither party raised A.R.S. § 1–249 in *Hall* and the opinion does not discuss it.

sert its claim because, even if the application of the amended statute abrogating the estate's claim is not retroactive, the estate's APSA claim against Murphy accrued before the amendment effectively repealed that right.[7]

¶ 19 Arizona's general savings statute, A.R.S. § 1–249,[8] provides that "[n]o action or proceeding commenced before a repealing act takes effect, and *no right accrued is affected by the repealing act,* but proceedings therein shall conform to the new act so far as applicable." (Emphasis added.)

¶ 20 We interpret statutes according to their plain meaning. *City of Tucson v. Clear Channel Outdoor, Inc.,* 209 Ariz. 544, 559, ¶ 71, 105 P.3d 1163, 1178 (2005) (citation omitted). Section 1–249 has two meanings. First, it provides "no action . . . commenced before a repealing act takes effect . . . is affected by the repealing act." A.R.S. § 1–249. As demonstrated above, that part of the statute has no effect here because the estate did not file its claim against Murphy until after the APSA amendment became effective.

¶ 21 However, the statute also provides "no right accrued is affected by the repealing act." *Id.* As *Hall* demonstrates, a claim can accrue years before it vests. "The filing of an action is clearly not synonymous with its accrual, since lawsuits may be filed months or even years after the litigated events occur." *Id.* at 137, 717 P.2d at 441 (citation omitted). Both parties agree that the claim accrued in October or November of 2000. *See Anson v. Am. Motors Corp.,* 155 Ariz. 420, 423, 747 P.2d 581, 584 (App.1987) (A "cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by defendant's negligent conduct.") (citation omitted). The

remaining question is whether the amendment to § 46–455(B) constituted a "repealing act" under A.R.S. § 1–249.

¶ 22 The 2003 amendment to the APSA resulted from the enactment of Senate Bill 1010. In that bill, the legislature amended both the MMA and the APSA. First, the legislature amended the MMA to eliminate causes of actions "based on the neglect, abuse or exploitation of an incapacitated or vulnerable adult except as provided in section 46–455." Second, the legislature amended the APSA to limit the licensed physicians against whom an APSA claim could be brought to those who were designated in the amendment. A.R.S. § 46–455(B). Legislative history indicates that the amendment was intended to "provide an exception from civil liability under the Adult Protective Services Act (APSA) for certain health care providers." S.B. 1010 Fact Sheet, 46th Legis. (Ariz.2003). Thus, the text of the amendment, confirmed by the legislative history, demonstrates that the legislature intended to eliminate the previously existing right to bring an APSA claim against physicians like Dr. Murphy.

¶ 23 Our cases treat such amendments in this context as repealing acts. When the legislature amends a statute, "we presume the legislature intended to change [the] law." *Tucson Elec. Power Co. v. Apache Co. et al.,* 185 Ariz. 5, 22, 912 P.2d 9, 26 (App.1995). While unchanged portions of an amended statute continue in effect and are not considered repealed and then reenacted, *Ariz. Downs v. Superior Court,* 128 Ariz. 73, 623 P.2d 1229 (1981), "an amendment of a statute, covering the same subject matter, implicitly repeals the earlier version." *Tucson Elec.,* 185 Ariz. at 23, 912 P.2d at 27 (citation omitted). Specifically, our su-

---

7. The estate has made no argument here that its APSA claim against Murphy should relate back to the time that it asserted its APSA claim against the hospital.

8. Section 12–504 is also commonly referred to as a "savings statute" in the context of a statute of limitations. Nevertheless, the Arizona Supreme Court has also identified A.C.A. § 1–109 (1939), the predecessor statute to A.R.S. § 1–249, as a general "savings statute." *Maricopa Co. v. Doug-*

*las,* 69 Ariz. 35, 208 P.2d 646 (1949). Other states similarly refer to this type of statute as a general savings statute. *See* Kan. Stat. Ann. § 77–201 (2004); Mich. Comp. Laws Ann. § 8.4(a) (2006); Minn.Stat. Ann. § 645.35 (2006); Mo. Ann. Stat. § 1.170 (2006); Neb.Rev. Stat. Ann. § 49–301 (2005); N.Y. Gen. Constr. Law § 93 (2006); Okla. Const. art. 5, § 54; R.I. Gen. Laws § 3–22 (1956); Tenn.Code Ann. § 1–3–101 (2005); Utah Code Ann. § 68–3–5 (2005); Wis. Stat. Ann. § 990.04 (2005).

preme court has held that an amendment repealing a previously existing right is a repealing act for purposes of the savings statute. *Douglas*, 69 Ariz. at 42, 208 P.2d at 650. In *Douglas*, plaintiff Maricopa County asserted an action pursuant to a right provided by statute. Sometime after plaintiff's claim accrued, however, the legislature amended the act to repeal that right. Defendants contended that the cause of action abated with the legislature's amendment, but the court held that the amendment constituted a repealing act and the cause of action thus was preserved by the savings statute. *Id.*

¶ 24 Other states follow this rule that an amendment repeals rights removed pursuant to the amendment.

> When a statute is amended, the portions not modified 'are to be considered as having been the law from the time when they were enacted; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment.'

*People v. Morante*, 20 Cal.4th 403, 84 Cal. Rptr.2d 665, 975 P.2d 1071, 1089 n. 14 (1999) (citation omitted); *see also Goodknight v. Piraino*, 255 Ill.App.3d 738, 194 Ill.Dec. 521, 627 N.E.2d 1163, 1166 (1993) ("an amendment to a statute operates as a repeal of its provisions to the extent they are changed by and rendered repugnant to the amendatory act"); *Spokane & E. Trust Co. v. Hart*, 127 Wash. 541, 221 P. 615, 619 (1923) ("Where a section of a statute is amended by an act which purports to set out in full all it is intended to contain, any matter which was in the original section but not in the amendatory section is repealed by the omission.").

¶ 25 In the context presented by this case, Senate Bill 1010 repealed a cause of action against "certain health care providers" under the APSA. It thus abrogates a right present in an earlier version of that statute and is a repealing act for purposes of A.R.S. § 1–249. Thus, pursuant to A.R.S. § 1–249, the legislature's repeal of the right to bring APSA claims against physicians does not, in this case, abrogate the estate's APSA claim against Murphy because the claim had already accrued. Thus, the court erred in granting summary judgment to Murphy on that claim.

## CONCLUSION

¶ 26 For the foregoing reasons, we reverse the trial court's grant of summary judgment to Murphy and remand.

JEFFERSON L. LANKFORD, P.J., and ANN A. SCOTT TIMMER, J., concur.