345 P.3d 138

**CITY OF APACHE JUNCTION, a municipal corporation; and City of Casa Grande, a municipal corporation, Plaintiffs/Appellants,**

**v.**

**Delores J. DOOLITTLE, in her official capacity as County Treasurer for Pinal County, Defendant/Appellee.**

**No. 1 CA–CV 13–0744.**

Court of Appeals of Arizona, Division 1.

March 17, 2015.

Fennemore Craig PC, By Timothy J. Berg, Andrew M. Federhar, Theresa Dwyer–Federhar, Phoenix, Counsel for Plaintiffs/Appellants.

Greenberg Traurig LLP, By E. Jeffrey Walsh, Stacey F. Gottlieb, Phoenix, Counsel for Defendant/Appellee.

Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Presiding Judge MARGARET H. DOWNIE and Judge RANDALL M. HOWE joined.

## OPINION

NORRIS, Judge:

¶ 1 In May 1999, the Legislature repealed the statute that enabled municipalities to use tax increment financing ("TIF") to finance redevelopment projects. The issue in this appeal is whether Defendant/Appellee Pinal County Treasurer Delores Doolittle is required to distribute TIF revenues to Plaintiffs/Appellants, the Cities of Apache Junction and Casa Grande, because, before the effective date of the repeal, the Cities adopted redevelopment plans that allowed them to use TIF. We hold the County Treasurer is not required to make those distributions and, therefore, affirm the superior court's judgment in her favor.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Arizona law authorizes a municipality to acquire and redevelop slum or blighted real property after making a finding of necessity and approving a redevelopment plan. Ariz.Rev.Stat. ("A.R.S.") §§ 36–1473, –1474, –1479 (2014). A municipality may finance a redevelopment project with bonds, loans, grants, city tax revenues, cash advances, and other municipal funds. A.R.S. §§ 36–1474(A)(3)(f), (5), (8), –1481(A), –1488 (2014). As codified in A.R.S. § 36–1488.01, 1977 Ariz. Sess. Laws ch. 91, § 7, from 1977 until December 31, 1998, a municipality could also fund redevelopment with TIF. A.R.S. § 36–1488.01 (1993) *repealed by* 1999 Ariz. Sess. Laws ch. 165, § 4.

¶ 3 TIF allowed a municipality to use property taxes generated by increases in property values above their pre-redevelopment levels, or tax increments, to finance redevelopment itself.[1] Specifically, by including a TIF provision in its redevelopment plan, a municipality became eligible to pay redevelopment costs with "[t]hat portion of the levied taxes each year in excess of" the amount that would be produced by property within the redevelopment area as valued before approval of the redevelopment plan ("base value"). A.R.S. § 36–1488.01(B); *accord City of Tucson v. Corbin*, 128 Ariz. 83, 86, 623 P.2d 1239, 1242 (App.1980).

¶ 4 The TIF statutory scheme imposed a corresponding obligation on taxing agencies to pay the tax increment revenues "into a special fund" for the municipality's redevelopment costs. A.R.S. § 36–1488.01(B). The TIF statute required every redevelopment plan with a TIF provision to specify the length of time TIF revenues could be collected and allocated for redevelopment. *Id.* at

---

1. "In theory, the [TIF] process is a closed circuit: the incremental revenues pay for the public expenditures, which induce the private investment, which generates the incremental revenues, which pay for the public expenditures." Richard Briffault, *The Most Popular Tool: Tax Increment Financing and the Political Economy of Local Government*, 77 U. Chi. L.Rev. 65, 68 (2010).

(D)(1). "When the loans, advances and indebtedness [associated with redevelopment], if any, and interest, ha[d] been paid," any remaining TIF revenues were to be "paid into the funds of the respective taxing agencies as taxes on all other property are paid." *Id.* at (B)(2).

¶ 5 In March 1996 and July 1998, respectively, Casa Grande approved the High School Area Redevelopment and Improvement Plan and the Central City Area Redevelopment Plan, and in July 1998, Apache Junction approved the Crossroads Redevelopment Area Improvement Plan (collectively, the "Plans"). All three Plans included a TIF provision that authorized the Cities to use TIF for up to 30 years "from the date of the first collection and allocation of said tax increments."

¶ 6 In May 1999 the Legislature repealed A.R.S. § 36–1488.01 "effective retroactively to from and after December 31, 1998." 1999 Ariz. Sess. Laws ch. 165, §§ 4, 10. Despite the repeal, the County Treasurer's predecessor began to distribute TIF revenues to Apache Junction for its Crossroads Redevelopment Plan in October 1999 and to Casa Grande for its High School and Central City Redevelopment Plans in December 2000 and October 2002, respectively. The County Treasurer continued to make TIF distributions to Apache Junction until September 2010 and to Casa Grande until October 2010. Thereafter, the County Treasurer refused to make any additional TIF distributions to the Cities.

¶ 7 The Cities sued the County Treasurer, and sought, *inter alia,* a writ of mandamus "ordering the Treasurer to distribute all past and future owed TIF Funds." The superior court granted summary judgment to the County Treasurer, essentially ruling that the Cities had no right to TIF distributions because the Legislature had repealed A.R.S. § 36–1488.01.

## DISCUSSION

### I. The Repealing Act

■ ¶ 8 On appeal, the Cities argue the superior court misinterpreted the repealing act, arguing it merely abrogated a municipality's "authority to include a TIF-based repayment provision in any new redevelopment plan" while leaving intact their right to TIF distributions because they had adopted their Plans before the repeal. Because the construction of the repealing act presents a question of law, we exercise de novo review. *See, e.g., Spirlong v. Browne,* 236 Ariz. 146, 149, ¶ 8, 336 P.3d 779, 782 (App.2014).

¶ 9 The language of the repealing act does not support the Cities' argument. *See, e.g., Bunker's Glass Co. v. Pilkington PLC,* 206 Ariz. 9, 12, ¶ 4, 75 P.3d 99, 102 (2003) ("Generally, the best indicator of the meaning of a statute is its plain language." (citation omitted)). The repealing act did not simply address a municipality's authority to adopt a redevelopment plan incorporating TIF, but rather the entirety of A.R.S. § 36–1488.01. The repealing act states, in relevant part, "Section 36–1488.01, Arizona Revised Statutes, is repealed." 1999 Ariz. Sess. Laws ch. 165, § 4. Thus, not only did the repealing act repeal the authority of municipalities to include TIF provisions in their redevelopment plans, but it also repealed the obligation of "taxing agencies"—the County Treasurer for our purposes—to annually allocate, collect, and pay the portion of property taxes generated when redevelopment property exceeds its base value. A.R.S. § 36–1488.01(B). Thus, when the Legislature repealed A.R.S. § 36–1488.01, it also revoked and abrogated the County Treasurer's duty to allocate, collect, and pay TIF distributions each year after December 31, 1998.

¶ 10 Our interpretation of the repealing act is consistent with the intent of the Legislature as reflected in the Senate Fact Sheet which accompanied the repeal. *See, e.g., State v. Payne,* 223 Ariz. 555, 563 n. 5, ¶ 25, 225 P.3d 1131, 1139 n. 5 (App.2009) ("Senate fact sheets" are "relevant legislative history and ... reflective, though not dispositive, of legislative intent." (citing *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.,* 207 Ariz. 445, 449, ¶ 19, 88 P.3d 159, 163 (2004))). The stated purpose of the repealing act was "to limit access to public monies *for the purpose of financing* theme parks, multipurpose facility districts and redevelopment plans." Final Revised Senate Fact Sheet,

H.B.2026, 44th Leg., 1st Reg. Sess. (May 11, 1999) (emphasis added). In particular, the Fact Sheet explained, succinctly and without qualification, the repealing act "[r]etroactively repeal[ed] [the] statute authorizing a city, town or county *to utilize property tax increment financing to finance* redevelopment projects from and after December 31, 1998." *Id.* (emphasis added).

¶ 11 Further, if the Legislature had intended to preserve a municipality's right to receive TIF distributions under redevelopment plans approved before the repeal, it could have done so clearly and easily with language similar to what it used in other sections of the same act. In addition to TIF, the repealing act also addressed a municipality's authority to "borrow money and issue bonds to finance construction of … infrastructure … reasonably necessary to complete construction of any theme park," and the authority of municipalities in the same county to organize a multipurpose facilities district with the power to tax and spend county monies. 1999 Ariz. Sess. Laws ch. 165, §§ 1, 8. The Legislature abrogated a municipality's authority to finance theme park infrastructure or organize a multipurpose facilities district. But, unlike its outright repeal of TIF, the Legislature nevertheless allowed municipalities to continue those projects along with their concomitant financing if they had reached certain milestones by a specified date. *See id.* Thus, the repealing act allowed municipalities to continue to issue bonds and borrow money to finance infrastructure related to those theme parks "subject to a memorandum of understanding … entered into before January 1, 1999." *Id.* at § 1. Similarly, the repealing act allowed municipalities to form multipurpose facility districts and exercise the associated authority to tax and spend county monies but only if, before December 31, 1998, "the governing body of one or more of the municipalities [forming the multipurpose facilities district] identified the location of a multipurpose facility and ha[d] voted with the purpose of forming a district for multipurpose facilities under this subsection." *Id.* at § 8.

¶ 12 The Legislature did not take similar action to preserve a municipality's right to TIF distributions and notably did not describe any circumstance under which TIF distributions could continue. In the absence of any action similar to the amendment of the theme park and multipurpose facility statutes described above, we will not read an intent to preserve a municipality's right to TIF distributions into the simple and straightforward language the Legislature *did* employ to repeal A.R.S. § 36–1488.01. *Cf. Sharpe v. Ariz. Health Care Cost Containment Sys.*, 220 Ariz. 488, 496, ¶ 25, 207 P.3d 741, 749 (App. 2009) ("Under the statutory interpretive principle of *expressio unius est exclusio alterius,* when the legislature makes a requirement in one provision of the statute but does not include it in another, we assume the absence of the requirement was intentional." (citation omitted)).

¶ 13 Nevertheless, the Cities argue that by using a retroactive effective date, the Legislature demonstrated an intent to preserve a municipality's right to TIF distributions under redevelopment plans approved before that date. If the Legislature did not intend to preserve pre-existing rights to TIF revenues without "invit[ing] a rush of cities to enact TIF-based redevelopment plans before the repeal took effect," the Cities argue, "why have a retroactively effective date at all?" Besides being speculative, this argument begs the question of whether the Legislature intended to preserve such rights in the first place.

¶ 14 Contrary to the Cities' argument, rejecting their interpretation of the repealing act does not render the retroactive effective date "a nullity." *Cf. Grand v. Nacchio,* 225 Ariz. 171, 175–76, ¶ 22, 236 P.3d 398, 402–03 (2010) ("We ordinarily do not construe statutes so as to render portions of them superfluous." (citation omitted)). The Legislature may have repealed A.R.S. § 36–1488.01 "to from and after December 31, 1998" for other reasons. 1999 Ariz. Sess. Laws ch. 165, § 10. For example, the Legislature may have adopted the retroactive effective date because it wanted to prevent another year of TIF distributions in light of its intent "to limit access to public monies for the purpose

of financing ... redevelopment plans." Final Revised Senate Fact Sheet, H.B.2026, 44th Leg., 1st Reg. Sess. (May 11, 1999). Or, the Legislature may have repealed A.R.S. § 36–1488.01 "to from and after December 31, 1998," to avoid the administrative complexity of cutting off TIF distributions at a time other than the end of the calendar year. Property taxes are levied annually in August based on valuations assessed as of January 1 of the preceding calendar year. A.R.S. §§ 42–11001(18), (19)(a), –17151(A) (Supp. 2014).[2]

¶ 15 Thus, we hold the repealing act did not preserve the Cities' right to TIF distributions arising from taxes levied after December 31, 1998, and it affirmatively abrogated the County Treasurer's obligation to make TIF distributions after that date.

## II. A.R.S. Section 1–249

¶ 16 The Cities also argue that interpreting the repeal of A.R.S. § 36–1488.01 to abrogate their right to TIF distributions violates the rule of statutory construction that "no right accrued is affected by the repealing act." A.R.S. § 1–249 (2002). *See Higgins' Estate v. Hubbs,* 31 Ariz. 252, 264, 252 P. 515, 519–20 (1926). The Cities contend their "right" to receive TIF distributions for the entire 30–year term of their Plans accrued when they "exercised their state-conferred authority to promulgate TIF-based redevelopment plans" in 1996 and 1998, and, that right, having accrued in 1996 and 1998, remained unaffected by the repeal. We disagree.

¶ 17 Black's Law Dictionary defines "accrue" as "[t]o come into existence as an enforceable claim or right; to arise," 22 (8th ed.2004), and "accrued right" as a "matured right; a right that is ripe for enforcement." *Id.* at 1347. Our case law substantiates this articulation as Arizona courts have held that a statutory right has accrued, and thus is unaffected by repeal under A.R.S. § 1–249, only when all conditions necessary for its enforcement have occurred before the effective date of the repeal. *See, e.g., Maricopa Cnty. v. Douglas,* 69 Ariz. 35, 42, 208 P.2d

646, 650 (1949) (county's statutory right to pursue recovery of old-age assistance from recipient's children not abrogated by amendments enacted after events giving rise to county's claim); *Higgins' Estate,* 31 Ariz. at 264–65, 252 P. at 519–20 (state's statutory claim against estate for inheritance tax "accrued" at time of death and, thus, was unaffected by subsequent repeal); *Brunet v. Murphy,* 212 Ariz. 534, 540, ¶ 25, 135 P.3d 714, 720 (App.2006) (right to sue physician under statute had "accrued" because predicate injury occurred before amendment abrogating right to sue). *Cf. Brown Wholesale Elec. Co. v. H.S. Lastar Co.,* 152 Ariz. 90, 94, 730 P.2d 267, 271 (App.1986) (statutory right to proceed against general contractor's bond did not survive modification of statute because condition that building materials be used not met before effective date of repeal); *In re Dos Cabezas Power Dist.,* 17 Ariz.App. 414, 418, 498 P.2d 488, 492 (1972) (right to form power district did not survive amendment precluding its formation because power district's "future existence was [still] subject to a favorable vote" on effective date of amendment).

¶ 18 Here, the Cities' right to TIF distributions did not accrue—was not ripe for enforcement—when they approved the Plans; instead that right was expectant and contingent. *See Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986) ("[Rights] are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen...." (quoting *Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1913))).

¶ 19 First, when they adopted the Plans, the Cities' right to receive a TIF distribution was contingent on property values within the redevelopment areas exceeding their base values. A.R.S. § 36–1488.01(B). Rising property values are never certain, even with redevelopment. *See, e.g.,* Joseph Blocher & Jonathan Q. Morgan, Univ. of N.C. at Chapel Hill Sch. of Gov't, *Questions About Tax In-*

---

**2.** Though the Arizona Legislature amended these statutes after it repealed A.R.S. § 36–1488.01, these amendments did not materially alter the subsections referenced above.

crement Financing in North Carolina, 5 Community and Econ. Dev. Bull. 1, 9–10 (2008); Richard Briffault, The Most Popular Tool: Tax Increment Financing and the Political Economy of Local Government, 77 U. Chi. L.Rev. 65, 80–82 (2010). Second, even ignoring this practical reality, when they approved their Plans, the Cities' right to any TIF distribution remained contingent on taxes being levied, allocated, and, most importantly, collected. A.R.S. § 36–1488.01(B). Thus, the Cities' right to TIF distributions arising from taxes levied after the effective date of the repeal was not ripe for enforcement when the Cities approved their Plans in 1996 and 1998. Cf. Dos Cabezas Power Dist., 17 Ariz.App. at 418, 498 P.2d at 492 (party seeking to enforce right to form power district, based on statute repealed while formation of district was still "subject to the contingency of a favorable vote at the polls," "beg[ged] the question" by framing its right as "a vested right to call an election," and "real issue" remained whether party seeking to form district "had an immediate fixed right to in fact be a power district").

¶ 20 The Cities rely on a case decided by the Ohio Supreme Court for the proposition that the repeal of a statute cannot affect "the consequences of its operation while in force." State ex rel. Bd. of Educ. of Kenton City Sch. Dist. v. State Bd. of Educ., 174 Ohio St. 257, 189 N.E.2d 72, 75 (1963) (citation omitted). Even accepting this general rule of law, the Cities do not take the crucial analytical step of addressing the consequences of A.R.S. § 36–1488.01 when it was in force. As the Ohio Supreme Court also noted: "the determination of what is a 'right' in a situation … must be made with respect to that particular situation or instance out of which it is claimed to have arisen." Kenton City Sch. Dist., 189 N.E.2d at 76. Kenton City School District as well as Toledo City School District Board of Education v. State Board of Education—a case the Cities relied on at oral argument before this court—both held school districts were entitled to certain funds notwithstanding the repeal of the statutes that entitled the school districts to those funds. Kenton City Sch. Dist., 189 N.E.2d at 76; Toledo City Sch. Dist., 18 N.E.3d 505, 519–20 (Ohio App.2014). In each case, how-

ever, unlike here, before the repeals, the school districts had met all of the conditions necessary to earn the funding, and thus, to deny the school districts the funding would be to undo the consequences of the statutes' operation while they were in force. Kenton City Sch. Dist., 189 N.E.2d at 76 ("Inasmuch as the statute was in force at the time of consolidation [which entitled the school district to certain funds] in the present case, a right accrued to the consolidated district which, if the statute had not been amended, could have beyond question been enforced by a writ of mandamus."); Toledo City Sch. Dist., 18 N.E.3d at 518 ("[T]o the extent that the 2009 Budget Bill nullifies the [school] Districts' statutory right to … funding in [financial year] 2005 through [financial year] 2007, the Budget Bill affects a substantive right belonging to the [school] Districts. As such, the relevant portion of the 2009 Budget Bill is unconstitutionally retroactive….").

¶ 21 In contrast to Kenton City School District and Toledo City School District, denying the Cities TIF distributions from taxes levied on and after December 31, 1998 does not alter the consequences of the operation of A.R.S. § 36–1488.01 before that date. Unlike the Ohio cases, with the repeal of A.R.S. § 36–1488.01 the Legislature did not nullify or deny funds the Cities had earned before the repeal. Our conclusion, thus, merely effectuates the Legislature's intent to halt the operation of the TIF machinery "to from and after December 31, 1998." 1999 Ariz. Sess. Laws ch. 165, § 10.

III. The Presumption against Retroactivity

¶ 22 Finally, the Cities argue the superior court's ruling violates the "deeply rooted" policy against retroactive legislation. Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994); see also A.R.S. § 1–244 (2002). "If a right is not vested," however, "abrogation of that right does not amount to a retroactive abrogation." Brunet, 212 Ariz. at 538, ¶ 14, 135 P.3d at 718; accord Hall, 149 Ariz. at 139–40, 717 P.2d at 443–44. Even if we assume the Cities could have a vested right to TIF distributions, but see City of Tucson v. Whiteco Metrocom, Inc., 194 Ariz. 390,

394, ¶ 9, 983 P.2d 759, 763 (App.1999), on appeal the Cities have specifically acknowledged they are not claiming any such right.

**CONCLUSION**

¶ 23 For the foregoing reasons, we affirm summary judgment in favor of the County Treasurer. Pursuant to A.R.S. § 12–348.01 (Supp.2014), and A.R.S. § 12–341 (2003), we award the County Treasurer reasonable at-torneys' fees and statutory taxable costs on appeal, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.