IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

―――――――――――――――――

MICHAEL K. REILLY AND SIERRA PIPELINE, LLC,
*Plaintiffs/Judgment Creditors/Appellants,*

*v.*

PHILIP L. CANALE AND TERRA CANALE,
*Defendants/Judgment Debtors/Appellees.*

No. 2 CA-CV 2023-0197
Filed March 3, 2025

―――――――――――――――――

Appeal from the Superior Court in Pima County
No. C20114665
The Honorable Cynthia T. Kuhn, Judge

**AFFIRMED**

―――――――――――――――――

COUNSEL

Mesch Clark Rothschild, Tucson
By Bernardo M. Velasco and Melvin C. Cohen
*Counsel for Plaintiffs/Judgment Creditors/Appellants*

The Law Offices of CR Hyde PLC, Tucson
By Charles R. Hyde
*Counsel for Defendants/Judgment Debtors/Appellees*

## OPINION

Judge Gard authored the opinion of the Court, in which Presiding Judge O'Neil and Vice Chief Judge Eppich concurred.

G A R D, Judge:

¶1 Arizona law exempts homestead property from legal process by creditors, up to a certain amount in value. A.R.S. § 33-1101.[1] In November 2022, Arizona voters approved Proposition 209, the Predatory Debt Collection Protection Act ("the Act"), which increased the exemption's amount from $250,000 to $400,000. *Compare* former § 33-1101 (version effective Jan. 1, 2022), *with* § 33-1101 (version currently in effect). The amendment, however, applies prospectively and does not affect "rights and duties" that matured before the Act's effective date of December 5, 2022.

¶2 In 2016, Michael Reilly and Sierra Pipeline, LLC (collectively, "Reilly") obtained a judgment against Philip and Terra Canale and recorded it against the Canales' homestead property, creating a lien. Reilly did not, however, seek to force the property's sale until after the Act's effective date. The superior court concluded that Reilly's rights to force the property's sale and to collect the non-exempt proceeds thereof had not yet matured when the Act became effective, entitling the Canales to § 33-1101's increased exemption amount. Reilly appeals from that decision, and, for the reasons described below, we affirm.

### Factual and Procedural Background

¶3 In October 2016, Reilly obtained a judgment against the Canales in the amount of $1,459,618.03, plus costs and accruing post-judgment interest.[2] He recorded the judgment the same day in Pima

---

[1]Unless otherwise indicated, all citations to § 33-1101 refer to the version currently in effect.

[2]The judgment followed a 2013 jury trial, a trial court order granting a new trial, and a subsequent appellate decision reversing the new-trial order. The parties' dispute stemmed from a failed business relationship, the details of which are immaterial to the question presented here but are

County, where the Canales owned real property. Reilly engaged in various collection efforts between 2016 and 2019, applying for charging orders against the Canales' other business interests, a writ of garnishment, and a judgment debtor's examination. Reilly did not, however, seek to force the sale of the Canales' Pima County property, nor did he initiate any other collection actions between 2019 and 2023.

**¶4**        In November 2022, Arizona voters passed the Act by initiative. It amended multiple Arizona statutes related to debt collection, including, as relevant here, § 33-1101. As to that statute, the Act increased the homestead exemption's amount to $400,000 and made it subject to an annual cost-of-living increase based on the consumer price index. The Act also included a Saving Clause:

> This act applies prospectively only. Accordingly, it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

The Act went into effect on December 5, 2022.

**¶5**        In March 2023, Reilly applied for a writ of general execution, targeting only the Canales' Pima County property. The Canales responded to the application and moved to quash the writ, seeking, among other things, a declaration that the property was their homestead and that $400,000 of the sale proceeds were exempt from collection under the Act's amendments to § 33-1101(A). Because Reilly had no collection action pending on the Act's effective date, the Canales reasoned, he held no mature right to force the property's sale. They proposed that Reilly instead held only an unexercised right to attempt a forced sale, which did not trigger the clause. In his reply, Reilly did not contest that the property qualified as the Canales' homestead. He maintained, however, that his unsatisfied judgment and associated lien gave him an interest in the Canales' property and a mature right to demand payment, thereby

---

fully recited in our previous memorandum decision, *Reilly v. Canale*, No. 2 CA-CV 2015-0090 (Ariz. App. Feb. 4, 2016) (mem. decision).

triggering the Saving Clause and limiting the Canales' homestead exemption to $250,000. *See* § 33-1101 (version effective Jan. 1, 2022).

**¶6**        Following oral argument, the superior court denied the motion to quash but determined that the applicable homestead exemption amount was $400,000. The court observed that Reilly's decision to satisfy the judgment through a forced sale was an elective one subject to specific statutory preconditions. Given those preconditions, the court concluded that Reilly's judgment and lien gave him only an expectant and contingent right to force the property's sale and apply its proceeds to the judgment. Citing *City of Apache Junction v. Doolittle*, 237 Ariz. 83, ¶¶ 16-18 (App. 2015), the court concluded that a contingent or expectant right is not a mature right. Reilly appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

### Discussion

**¶7**        Reilly contends that the amendments to § 33-1101(A) do not apply retroactively and that the Canales are only entitled to the pre-Act homestead exemption of $250,000. He maintains that the operative right or duty, for purposes of the Saving Clause, is his substantive right to payment under the judgment and associated lien, which matured in 2016. He posits that his 2023 application for a writ of general execution was merely "a procedural step taken to enforce" his mature substantive right to payment. In his reply, he distinguishes further between this substantive right to payment and the "derivative" or "procedural" right to engage in legal collection processes, and he asserts that a mature substantive right necessarily also matures all derivative procedural rights.

**¶8**        The Canales, in contrast, propose that the "rights and duties" with which the Saving Clause is concerned are those emanating from statutory collection actions. They observe that Reilly did not initiate a writ action before the Act's effective date and argue that he therefore had no mature right either to force a sale of their homestead or to collect any proceeds from that sale. Because this case turns on the interpretation of various statutory provisions, we review the superior court's decision de novo. *Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, ¶ 11 (2021).

**¶9**        We begin with the text when construing statutes. *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, ¶ 8 (2023); *see State v. Santillanes*, 256 Ariz. 534, ¶ 11 (2024) ("Where the language of a statute passed by voter initiative 'is clear and unambiguous, we apply its plain meaning and the inquiry

4

ends.'" (quoting *State v. Jones*, 246 Ariz. 452, ¶ 5 (2019))). "We interpret statutes 'according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise.'" *In re Drummond*, 257 Ariz. 15, ¶ 19 (2024) (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023)); *see* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). "[W]e may consider dictionary definitions where a statute does not define a term." *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, ¶ 20 (2021).

¶10　　　Further, when "construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Drummond*, 257 Ariz. 15, ¶ 5 (quoting *Stambaugh v. Killian*, 242 Ariz. 508, ¶ 7 (2017)); *see State ex rel. DES v. Pandola*, 243 Ariz. 418, ¶ 6 (2018) ("When 'statutes relate to the same subject or have the same general purpose . . . they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law.'" (alteration in *DES*) (quoting *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122 (1970))). We will not "read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," nor will we "inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)). If "a statute's plain language is unambiguous in context, it is dispositive." *Drummond*, 257 Ariz. 15, ¶ 5. We may turn to secondary interpretation methods only if a statute is ambiguous. *Id.*

¶11　　　As discussed above, the Act's Saving Clause provides that the Act applies prospectively and "does not affect rights and duties that matured" before its effective date. The Saving Clause is thus consistent with Arizona's general recognition that "legislation applies only prospectively unless it 'contain[s] an express statement of retroactive intent.'" *Silence v. Betts*, ___ Ariz. ___, ¶ 14, 553 P.3d 192, 196 (App. 2024) (alteration in *Silence*) (quoting *Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 10 (2000)); *see also* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."); A.R.S. § 1-249 ("No action or proceeding commenced before a repealing act takes effect, and no right accrued is affected by the repealing act, but proceedings therein shall conform to the new act so far as applicable.").

¶12    Although the Act does not define "matured," there appears to be little disagreement about that definition here—the parties' disagreement instead turns on *what* rights are at issue and *when* they matured, if at all.  To the extent there is a dispute over this definition, common legal and non-legal dictionaries define the verb "to mature" as to become ripe, fully developed, or due.  *See Mature*, Merriam-Webster, https://www.merriam-webster.com   (last visited Feb. 10, 2025) ("to become fully developed or ripe" or "to become due"); *Mature*, American Heritage Dictionary, https://ahdictionary.com (last visited Feb. 10, 2024) (same definitions); *Mature*, Black's Law Dictionary (12th ed. 2024) ("(Of a debt or obligation) to become due.").  Consistent with these definitions, we have regarded "matured," as used in the Saving Clause, as synonymous with "vested," and we have determined that "[r]ights become vested when 'every necessary event has occurred' so that the rights are certain to be implemented, and they are not contingent on some future event or merely expectant."[3]  *Silence*, ___ Ariz. ___, ¶ 14, 553 P.3d at 196 (quoting *Aranda*, 198 Ariz. 467, ¶¶ 20-21); *see also Doolittle*, 237 Ariz. 83, ¶ 17 (interpreting "accrued" as used in § 1-249 as synonymous with "matured," and determining that a right has "accrued" and is "unaffected by repeal . . . only when all conditions necessary for its enforcement have occurred before the effective date of the repeal").

¶13    Applying these definitions here, there is no question that Reilly's right to payment under the judgment, along with the Canales' duty to pay it in full, matured well before the Act's effective date.  *See Silence*, ___ Ariz. ___, ¶ 14, 553 P.3d at 196 ("Proposition 209 does not affect the underlying judgment's amount because every necessary event occurred for [the judgment creditor] to obtain it, and the award became immediately enforceable and payable before the enactment of Proposition 209.").  Applying the Saving Clause, we conclude the Act does not affect these

---

[3]In another opinion, we distinguished between rights *vesting* and rights *maturing*.  *See Ariz. Creditors Bar Ass'n v. State*, 257 Ariz. 379, ¶ 31 (App. 2024) ("[R]ights and duties related to debt are commonly understood to mature, not vest.").  In that matter, however, we addressed a vagueness challenge and did not directly interpret the meaning of "to mature."  *Id.*  Moreover, we cited *Aranda* as evidence that the Act is consistent with the "ordinary framework" and noted that the Saving Clause is "not materially different from what courts apply to any new statute."  *Id.* ¶¶ 31-32.

rights and duties. In fact, even without the Saving Clause, the Act cannot reasonably be read to reduce or diminish existing judgments.[4]

¶14 Reilly argues that this conclusion should end the analysis because his rights under the judgment and lien are the only relevant rights for the Saving Clause's purposes. He proposes that, once a substantive right to payment matures, all "derivative" procedural rights necessary for its enforcement also mature, including, as relevant here, the right to force the sale of homestead property and to collect all non-exempt proceeds. *See Aranda*, 198 Ariz. 467, ¶ 12 ("procedural law relates to the manner and means by which a right to recover is enforced or provides no more than the method by which to proceed," while substantive law defines, creates, and regulates rights).

¶15 We have, however, concluded that "the phrase 'rights and duties,'" as used in the Saving Clause, "preserves substantive, and not procedural, rights and duties." *Ariz. Creditors Bar Ass'n*, 257 Ariz. 379, ¶ 31. This recognition is consistent with Arizona law, which generally allows procedural amendments to apply retroactively.[5] *See Aranda*, 198 Ariz. 467, ¶ 11 ("Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure."); *State v. Gum*, 214 Ariz. 397, ¶ 23 (App. 2007) ("A statute is not impermissibly retroactive if it is merely procedural

---

[4]With one exception not relevant here, the Act's amendments pertain exclusively to the statutory exemptions available to judgment debtors when creditors seek to obtain their assets through legal process. *See* Text of Proposed Amendment §§ 1-7, Proposition 209 ("Predatory Debt Collection Protection Act"), 2022 Ballot Propositions (amending A.R.S. §§ 12-1598.10 & 33-1131 (increasing percentage of wages exempt from garnishment); 33-1101 (increasing homestead exemption and adding annual cost-of-living adjustment); 33-1123 (increasing exemption for household furniture, furnishings and appliances and adding annual cost-of-living adjustment); 33-1125(8) (increasing exemption for motor vehicles and adding annual cost-of-living adjustment); 33-1126(A)(9) (increasing cash exemption and adding annual cost-of-living adjustment); and 44-1201 (imposing maximum interest rate for medical debt)).

[5]For this reason, we are not persuaded by Reilly's argument that the Saving Clause would produce constitutional concerns if interpreted not to preserve the pre-amendment homestead exemption under this case's circumstances. *See State v. Gum*, 214 Ariz. 397, ¶ 23 (App. 2007).

and does not affect an earlier established substantive right."); *Nowels v. Bergstedt*, 120 Ariz. 112, 114 (App. 1978) ("Statutes such as A.R.S. Secs. 12-1551 and 12-1612 are remedial and can apply to judgments previously rendered [because] the judgment debtor has no vested right in such statutes."). Because Reilly acknowledges that his right to satisfy the judgment through a forced sale of the Canales' homestead is procedural, the Saving Clause does not preserve it under our decision in *Arizona Creditors Bar Association*, 257 Ariz. 379, ¶ 31.

**¶16** Regardless, Reilly's right to enforce the judgment through a forced homestead sale had not matured before the Act's effective date. While Reilly maintains that a judgment automatically matures all associated procedural enforcement rights, he cites no authority supporting this argument. And we are not persuaded that passively holding a judgment and an associated lien automatically brings about "every necessary event" to conduct a forced sale and acquire all proceeds in excess of the homestead exemption. *Silence*, ___ Ariz. ___, ¶ 14, 553 P.3d at 196 (quoting *Aranda*, 198 Ariz. 467, ¶ 20). To the contrary, those events require antecedent judicial approval and actions by third parties.

**¶17** Although the judgment and lien gave Reilly a right to levy on the Canales' property, *see Sysco Ariz., Inc. v. Hoskins*, 235 Ariz. 164, ¶ 6 (App. 2014), this right was not self-effectuating. Rather, Reilly could only force a sale and collect the proceeds with advanced court authorization in the form of a writ of execution. *See* Ariz. R. Civ. P. 69(a) ("A monetary judgment is enforced by a writ of execution."); *see also* A.R.S. § 12-1551(A) (party with judgment may have writ of execution or other process issued for enforcement, at any time within ten years after entry of judgment and within ten years after any renewal of judgment); A.R.S. § 12-1552(B) (writs of execution must be signed by clerk and issued under seal of court); A.R.S. § 12-1553 (requirements for writ of general execution); A.R.S. § 33-1105 (judgment creditor may sell homestead property through Title 12 judicial sale). While the writ is not difficult to obtain, a judgment creditor must still initiate a court action to acquire it. *Cf. Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, ¶ 13 (App. 2014) (noting that garnishment proceedings are statutory in nature and treated as independent from original lawsuit).

**¶18** Once a writ is issued and served, the county sheriff or other official must levy it on the debtor's real and personal property and "pay[] to the judgment creditor or his attorney so much of the proceeds as will satisfy the judgment." A.R.S. § 12-1562(A). Where homestead property is concerned, however, the sheriff may not complete an execution sale unless

he or she receives a bid that "exceed[s] the amount of the judgment debtor's homestead plus the amount of any consensual liens on the property having a priority to the judgment." § 33-1105; *see* A.R.S. § 33-964(B). In fact, the sheriff may not even accept a bid lower than that sum. § 33-1105.

**¶19** *Silence* is instructive. There, we considered whether a judgment creditor, who had obtained a writ of garnishment before the Act's effective date, was entitled to garnish the judgment debtor's wages at the higher, pre-Act rate. ___ Ariz. ___, ¶¶ 4-5, 13-15, 553 P.3d at 194-97. Applying the Saving Clause, we agreed that the Act did not affect the judgment's amount or any wages garnished before the Act went into effect. *Id.* ¶¶ 14-15, 553 P.3d at 196-97. But after analyzing the garnishment statutes, which impose on a garnishee the duty to calculate a judgment debtor's non-exempt earnings anew each pay period, *see* A.R.S. §§ 12-1598.01(A), 12-1598.11(B), we concluded that "the amounts subject to garnishment each pay period after Proposition 209 became effective had not yet matured, and Proposition 209's changes therefore affect the garnishment prospectively," entitling the debtor to the Act's increased exemption. *Silence*, ___ Ariz. ___, ¶¶ 15-16, 553 P.3d at 196-97. Similarly, here, a sheriff may only complete an execution sale of homestead property and award proceeds to a judgment creditor in the uncertain event that he or she receives a bid in excess of the homestead and all liens with priority to the judgment lien. *See* § 33-1105. Only then does the homestead exemption automatically attach to the proceeds, requiring the sheriff to first pay the homestead to the judgment debtor. *Id.*; § 33-1101(C).

**¶20** Given the statutory framework, we agree with the superior court that Reilly's rights to force the property's sale and collect non-exempt proceeds from that sale were expectant and contingent on uncertain future events—specifically, the successful acquisition of an execution writ and completion of the statutory preconditions for a sale. *See Aranda*, 198 Ariz. 467, ¶¶ 20-21; *Silence*, ___ Ariz. ___, ¶ 14, 553 P.3d at 196; *see also Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 140 (1986) (recognizing that rights "are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event" and "are contingent when they are only to come into existence on an event or condition which may not happen" (quoting *Steinfeld v. Nielsen*, 15 Ariz. 424, 465 (1913))). These rights were not mature as of the Act's effective date, and the amended version of § 33-1101(A) applies, entitling the Canales to a homestead exemption of $400,000.

**Attorney Fees**

**¶21**        The Canales request attorney fees on appeal.  They do not, however, cite any authority for this request, other than A.R.S. § 12-341.01, which they invoke "[t]o the extent this matter arises out of contract."  In our discretion, we deny their request.  However, as the prevailing party, the Canales are entitled to their costs on appeal upon compliance with Rule 21(b), Ariz. R. Civ. App. P.

**Disposition**

**¶22**        Because we conclude that Reilly's rights had not yet matured as of the Act's effective date and therefore do not fall under the purview of the Saving Clause, the Canales are entitled to the post-Act homestead exemption of $400,000.  Accordingly, we affirm.